**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

MIGUEL ANGEL GOMEZ-HERNANDEZ,
            *Defendant-Appellant.*

No. 10-10441

D.C. No.
4:09-cr-02558-
RCC-JJM-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Raner C. Collins, District Judge, Presiding

Argued and Submitted
February 14, 2012—San Francisco, California

Filed May 31, 2012

Before: Susan P. Graber, Marsha S. Berzon, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## COUNSEL

Robert H. Sigal, Esq., Tucson, Arizona, for the defendant-appellant.

Kyle J. Healey, Assistant United States Attorney, United States Attorney's Office, Tucson, Arizona, for the plaintiff-appellee.

---

## OPINION

TALLMAN, Circuit Judge:

Miguel Angel Gomez-Hernandez ("Gomez-Hernandez") appeals the forty-one-month sentence imposed by the district court following his conviction for illegal reentry after deportation, in violation of 8 U.S.C. § 1326(a), enhanced by 8 U.S.C. § 1326(b)(2). He challenges the district court's determination that his prior Arizona state court conviction for attempted aggravated assault is a crime of violence, and the resulting sixteen-level sentencing enhancement under the U.S. Sentencing Guidelines Manual § 2L1.2(b)(1)(A)(ii).[1]

Gomez-Hernandez's principal contention on appeal is that his attempted aggravated assault conviction is not a crime of violence because *completed* aggravated assault under Arizona law encompasses a lesser mens rea than the generic definition of aggravated assault (ordinary recklessness rather than extreme indifference recklessness). But he was convicted of *attempted* aggravated assault and, under Arizona law, attempted aggravated assault cannot be based on this lesser mens rea. In essence, Gomez-Herndandez would have us ignore his crime of conviction and, instead, consider each statute underlying his conviction in isolation.

The Supreme Court has rejected such a hyper-formalistic approach. The purpose of comparing the statute of conviction

---

[1]The district court applied the 2009 edition of the U.S. Sentencing Guidelines Manual ("USSG"), and all references herein are to that edition. *See United States v. Stevens*, 462 F.3d 1169, 1170 (9th Cir. 2006) (citing USSG § 1B1.11).

to the generic offense is to determine whether a defendant's prior conviction justifies stricter consequences under the Sentencing Guidelines, such as the sixteen-level sentencing enhancement imposed here. Thus, the Court has been clear that this analysis should be conducted in the context of the defendant's actual crime of conviction. *See James v. United States*, 550 U.S. 192, 202 (2007) (applying approach established in *Taylor v. United States*, 495 U.S. 575 (1990)).

Here, we have no doubt that Gomez-Hernandez's conviction for attempted aggravated assault rested on the elements of generic attempted aggravated assault. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

I

Gomez-Hernandez was born in Mexico in 1978 and moved to the United States with his family when he was 13 years old. On September 10, 2001, Gomez-Hernandez was indicted for aggravated assault and attempted aggravated assault in the Arizona Superior Court for Maricopa County. The indictment alleged that Gomez-Hernandez, "using a carpet knife/razor, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly caused a physical injury to A.R., in violation of [Ariz. Rev. Stat.] §§ 13-3601(A), 13-1204(A)(2), (B), 13-1203(A)(1), 13-701, 13-702, 13-702.01 and 13-801." It further alleged that Gomez-Hernandez, "using a carpet knife/razor, a deadly weapon or dangerous instrument, intentionally, knowingly or recklessly attempted to cause a physical injury to G.R., in violation of [Ariz. Rev. Stat.] §§ 13-1001, 13-1204(A)(2), (B), 13-1203(A)(1), 13-701, 13-702, 13-702.01 and 13-801." Both offenses were charged as "dangerous" felonies involving "the discharge, use, or threatening exhibition of a carpet knife/razor, a deadly weapon or dangerous instrument, and/or the intentional or knowing infliction of serious physical injury upon [the named victim], in violation of [Ariz. Rev. Stat.] § 13-604(P)."

On October 31, 2001, Gomez-Hernandez pled guilty to aggravated assault and attempted aggravated assault as charged in the indictment. At the plea colloquy, Gomez-Hernandez testified briefly regarding the facts underlying the charges:

> THE COURT: [W]hat occurred with respect to Count 1 [aggravated assault]?
>
> THE DEFENDANT: Well, one day I was drunk and I cut her with a knife in her stomach.
>
> THE COURT: And who is she?
>
> THE DEFENDANT: My—she was—well, we were together; the mother of my children.
>
> THE COURT: And what happened with regards to Count 2, the attempted aggravated assault . . . ?
>
> THE DEFENDANT: I pointed—I pointed a knife at my sister-in-law.
>
> [DEFENSE COUNSEL]: Thereby placing them in reasonable apprehension of physical injury.
>
> THE COURT: These were all during the same incident?
>
> THE DEFENDANT: Yes, Your Honor.[2]

---

[2]According to the Pre-sentencing Report, Gomez-Hernandez went to the home of A.R., his long-term girlfriend and the mother of his two children, in an attempt to reconcile. When A.R. indicated that she did not wish to continue their relationship, he pinned her against the wall and sliced her on the neck with a razor knife. A.R.'s sister, G.R., pulled him backward but he attempted to cut G.R. and pushed her away. He then sliced A.R. across the stomach twice. G.R. again pulled him away and he fled the house on foot. Following his arrest two months later, Gomez-Hernandez admitted to the police that, at the time of the incident, he wanted to kill A.R. because he believed that she was involved in a relationship with another man.

Gomez-Hernandez was sentenced to seven-and-a-half years on the aggravated assault count and six years on the attempted aggravated assault count, both to run concurrently. He was deported to Mexico on February 28, 2008, following the completion of his sentence.

On October 22, 2009, the U.S. Border Patrol apprehended Gomez-Hernandez near Douglas, Arizona. He was indicted and pled guilty to one count of illegal re-entry after deportation, in violation of 8 U.S.C. § 1326(a), enhanced by 8 U.S.C. § 1326(b)(2). Over his objection, the district court imposed a forty-one-month sentence based, in part, on a sixteen-level enhancement under USSG § 2L1.2(b)(1)(A)(ii) for his previous deportation following the 2001 Arizona conviction.[3]

The district court allowed Gomez-Hernandez to enter into a conditional plea of guilty permitting this appeal of the sixteen-level enhancement. Gomez-Hernandez timely appealed.

II

[1] We review de novo a district court's determination that a prior conviction qualifies as a crime of violence. *United States v. Rodriguez-Guzman*, 506 F.3d 738, 740-41 (9th Cir. 2007). The Sentencing Guidelines provide for a sixteen-level enhancement for a defendant convicted under 8 U.S.C. § 1326, "[i]f the defendant previously was deported . . . after . . . a conviction for a felony that is . . . a crime of violence." USSG § 2L1.2(b)(1)(A)(ii). Aggravated assault is specifically enumerated in the Application Note to Guideline § 2L1.2 as

---

[3]The district court relied on Gomez-Hernandez's conviction for both aggravated assault and attempted aggravated assault. Because we conclude that Gomez-Hernandez's prior conviction for attempted aggravated assault qualifies as a crime of violence and thus justifies the district court's imposition of a sixteen-level enhancement under USSG § 2L1.2(b)(1)(A)(ii), we need not address whether the aggravated assault conviction would also justify the sentencing enhancement.

a crime of violence, *see* USSG § 2L1.2 cmt. n.1(B)(iii), as is attempting to commit aggravated assault, *see* USSG § 2L1.2 cmt. n.5.

We apply the approach set forth in *Taylor* to determine whether Gomez-Hernandez's prior conviction for attempted aggravated assault is a crime of violence under the Sentencing Guidelines. *See Esparza-Herrera*, 557 F.3d at 1024-25. Under the categorical approach, "federal courts do not examine the facts underlying the prior offense, but look only to the fact of conviction and the statutory definition of the prior offense and compare it to the generic definition of the offense." *United States v. Espinoza-Cano*, 456 F.3d 1126, 1131 (9th Cir. 2006) (internal quotation marks omitted); *see also Taylor*, 495 U.S. at 602 (explaining that the categorical approach "generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense").

If the statutory definition of the prior offense is not a categorical match, we apply the modified categorical approach. We examine "limited categories of documents to determine whether the facts underlying the conviction necessarily establish that the defendant committed the generic offense." *Espinoza-Cano*, 456 F.3d at 1131 (citing *Taylor*, 495 U.S. at 602). "[W]hen the conviction in question is based on a guilty plea, we have approved the sentencing court's consideration of the charging documents in conjunction with the plea agreement, the transcript of a plea proceeding, or the judgment . . . ." *Id.* (internal quotation marks omitted).

Two related *Taylor* analyses are required to determine whether a prior conviction for an attempt offense qualifies as a crime of violence. *See United States v. Saavedra-Velazquez*, 578 F.3d 1103, 1106-07 (9th Cir. 2009); *Rebilas v. Mukasey*, 527 F.3d 783, 787 (9th Cir. 2008). Specifically, we must determine whether the defendant's conviction establishes that he committed the elements of the generic definition of "attempt" *and* that the underlying offense he attempted meets the

generic definition of that offense. *See Saavedra-Velazquez*, 578 F.3d at 1106-07; *Rebilas*, 527 F.3d at 787.

### III

Gomez-Hernandez challenges the district court's determination that his prior Arizona conviction for attempted aggravated assault constitutes a crime of violence under the Guidelines. We conduct the two *Taylor* analyses: first, we ask whether Gomez-Hernandez's attempted aggravated assault conviction corresponds to the generic definition of attempt; second, we ask whether the offense he attempted corresponds to the generic definition of aggravated assault.

### A

**[2]** We have previously determined that Arizona's attempt statute and the generic definition of "attempt" are, in general, coextensive. *See United States v. Taylor*, 529 F.3d 1232, 1237-38 (9th Cir. 2008). Although our prior analysis was based on Arizona case law as of June 2008, *see id.*, we are not aware of any subsequent Arizona decision deviating from the generic definition of attempt. *See id.* ("At common law an attempt was defined as the specific intent to engage in criminal conduct and an overt act which is a substantial step towards committing the crime." (internal quotation marks and alterations omitted)). Thus, we are satisfied that Gomez-Hernandez was convicted of the generic elements of attempt.

### B

We turn to the second *Taylor* inquiry: was Gomez-Hernandez convicted of attempting to commit the elements of generic aggravated assault (i.e., the underlying offense)? Gomez-Hernandez argues that he was not because (1) completed aggravated assault under Arizona law encompasses a lesser mens rea than generic aggravated assault; and (2) Arizona's aggravated assault statute criminalizes non-violent

behavior. We address and reject each of Gomez-Hernandez's arguments in turn.

1

[3] There is no dispute that an Arizona conviction for aggravated assault (as opposed to *attempted* aggravated assault) does not categorically qualify as a crime of violence under Guideline § 2L1.2(b)(1)(A)(ii). *See Esparza-Herrera*, 557 F.3d at 1025. As we explained in *Esparza-Herrera*, Arizona's definition of "aggravated assault" encompasses acts done with ordinary recklessness. *See id.* at 1022 ("'Intentionally, knowingly or *recklessly* causing any physical injury to another person.'" (quoting Ariz. Rev. Stat. § 13-1203(A)(1))). By contrast, the generic definition of aggravated assault requires a greater mens rea—at least recklessness under circumstances manifesting extreme indifference to the value of human life. *Id.* at 1022-25 (relying on the Model Penal Code and the majority of state statutes).

[4] But our analysis does not end there. We are concerned in this appeal with Gomez-Hernandez's conviction for *attempted* aggravated assault, not *completed* aggravated assault. And it is well-settled that attempted aggravated assault under Arizona law covers only intentional conduct. *See State v. Kiles*, 857 P.2d 1212, 1224 (Ariz. 1993) ("[A]ttempt is a specific intent crime and by definition involves *intentional* conduct."). An Arizona conviction for attempted aggravated assault cannot be based on ordinary recklessness. *See id.*[4] Thus, Arizona's attempted aggravated assault offense—unlike the completed aggravated assault

---

[4]Nor is it possible under Arizona law to be guilty of attempted aggravated assault based on intentionally engaging in conduct that recklessly causes physical injury to another. That reasoning has been rejected by the Arizona courts. *See, e.g.*, *State v. Adams*, 745 P.2d 175, 178-79 (Ariz. Ct. App. 1987) ("[T]here is no such criminal offense as an attempt to achieve an unintended result.").

offense—does not encompass a lesser mens rea than the generic definition of aggravated assault.[5]

Gomez-Hernandez urges us to ignore that he was convicted of attempted aggravated assault and that, as a matter of Arizona law, his conviction could not have been based on mere recklessness. He reasons that his Arizona conviction for attempted aggravated assault cannot categorically qualify as a crime of violence unless Arizona's completed aggravated assault offense is itself a categorical match. In other words, Gomez-Hernandez would have us look at the underlying offense in isolation, without regard to his actual crime of conviction.

The Supreme Court rejected a similar argument in *James v. United States*, 550 U.S. 192, 201-09 (2007), where the Court held that attempted burglary under Florida law is categorically a violent felony under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). There, the defendant argued that Florida's attempt statute is overbroad because, on its face, it requires only that a defendant take " 'any act toward the commission' " of a burglary. *Id.* at 202 (quoting Fla. Stat.

---

[5]That the indictment alleged that Gomez-Hernandez "intentionally, knowingly or *recklessly attempted* to cause a physical injury" (emphasis added)—a legal impossibility—does not change this result. We do not rely on the indictment to conclude that his conviction was based on intentional conduct. We look only to the fact of his conviction for attempted aggravated assault and Arizona's definition of that offense. *See Taylor*, 495 U.S. at 602.

To the extent Gomez-Hernandez challenges the sufficiency of the Arizona indictment, a defendant generally has no right to collaterally attack a prior conviction used for purposes of a sentencing enhancement. *See United States v. Burrows*, 36 F.3d 875, 884-85 (9th Cir. 1994) (citing *Custis v. United States*, 511 U.S. 485 (1994)). In any event, had he raised this issue before the Arizona Superior Court prior to pleading guilty, the state would likely have been permitted to amend the indictment to reflect that "[t]he state was required to show that defendant acted 'intentionally' rather than merely 'recklessly.' " *State v. Delgado*, 848 P.2d 337, 340 (Ariz. Ct. App. 1993).

§ 777.04(1)). The Court acknowledged that the statutory text is broad, but refused to consider Florida's attempt statute in isolation. *Id.* Instead, the Court looked to the scope of Florida's attempt statute "*in the context of attempted burglary*" (i.e., the crime of conviction). *Id.* (emphasis added) ("[W]hile the statutory language is broad, the Florida Supreme Court has considerably narrowed its application in the context of attempted burglary, requiring an 'overt act directed toward entering or remaining in a structure or conveyance.' " (quoting *Jones v. State*, 608 So. 2d 797, 799 (Fla. 1992)). Indeed, the Court described its inquiry as "examining what constitutes attempted burglary under Florida law," *id.*—not some detached examination of Florida's attempt statute conducted without regard to the actual crime of conviction.[6]

We must not lose sight of the forest for the trees. The purpose of our application of *Taylor*'s two-step approach is to

---

[6]Gomez-Hernandez correctly points out that in applying the categorical approach to a prior attempt conviction in *Saavedra-Velazquez*, 578 F.3d 1103, and *Rebilas*, 527 F.3d 783, we compared the state's completed underlying offense statute with the generic definition. But neither case directly addressed whether the state's completed underlying offense statute should be considered in the context of a conviction for attempt to commit that offense. Indeed, we had no reason to do so; the result would have been the same.

In *Saavedra-Velazquez*, we held that "*completed* robbery under Cal. Penal Code § 211 is a 'crime of violence' for purposes of the Sentencing Guidelines." 578 F.3d at 1106. Thus, there was no overbreadth to remedy by looking to the attempt statute. In *Rebilas*, by contrast, the underlying crime was overbroad for encompassing conduct not proscribed by the generic offense. 527 F.3d at 785-87 (holding that Arizona's attempted public indecency to a minor offense is not coextensive with attempted sexual abuse of a minor because under Arizona law, *inter alia*, "the minor involved does not need to be touched, nor does the minor even need to be aware of the offender's conduct"). Such overbreadth as to conduct could never be remedied by looking to the attempt statute.

Here, by contrast, the underlying offense is overbroad with respect to mens rea, and that type of overbreadth *can* be remedied by looking to the attempt statute.

determine whether Gomez-Hernandez's prior attempted aggravated assault conviction justifies enhancing his sentence under the Guidelines. Under the categorical approach, the enhancement is justified if the full range of conduct encompassed by the statutory definition of the prior offense is also prohibited by the generic offense. *See United States v. Rivera*, 658 F.3d 1073, 1076-77 (9th Cir. 2011). Looking with myopic focus at Arizona's definition of completed aggravated assault—even though Gomez-Hernandez was convicted of attempted aggravated assault—would obstruct our ability to determine whether, as a matter of law, his state conviction necessarily rested on the same elements as required by the generic offense.

**[5]** We know with certainty that attempted aggravated assault under Arizona law requires specific intent. *See Kiles*, 857 P.2d at 1224. Generic aggravated assault requires only a heightened extreme indifference form of recklessness. *See Esparza-Herrera*, 557 F.3d at 1024-25. Consequently, Gomez-Hernandez's attempted aggravated assault conviction was not based on a lesser mens rea than the generic offense.

2

Gomez-Hernandez also argues that his conviction for attempted aggravated assault does not categorically qualify as a crime of violence because Arizona's aggravated assault statute criminalizes non-violent conduct, *see State v. Fierro*, 804 P.2d 72, 83 (Ariz. 1990) ("[I]t would be possible to commit aggravated assault without the use or threat of violence."). As an initial matter, we must consider whether the use or threat of violence is an element of generic aggravated assault. It is not.

**[6]** "We derive the meaning of an enumerated Guidelines crime not from the offense's ordinary meaning but rather by surveying the Model Penal Code and state statutes to determine how they define the offense." *Esparza-Herrera*, 557

F.3d at 1023. Neither Gomez-Hernandez nor the Government has provided us with a survey of the Model Penal Code and state statutes.[7] Based on our independent review, the threat or use of violence is not an element of the Model Penal Code's definition of aggravated assault, Model Penal Code § 211.1, or a majority of state statutes. We therefore conclude that the threat or use of violence is not an element of generic aggravated assault.

Nevertheless, the question remains whether Arizona's aggravating factors are coextensive with those of the generic offense. If not, then conviction of attempted aggravated assault in Arizona would not categorically match the generic crime of attempted aggravated assault, because the defendant did not necessarily attempt to commit all of the elements of generic aggravated assault.

Under the Model Penal Code, "[a] person is guilty of aggravated assault if he: (a) *attempts to cause serious bodily injury* to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another *with a deadly weapon*." Model Penal Code § 211.1 (emphases added). Consistent with this definition, the Eleventh Circuit concluded that "[t]he generic offense of 'aggravated assault'

---

[7]Gomez-Hernandez cites only prior opinions where the federal statute at issue, by its own terms, required the threat or use of violence. *See, e.g.*, *Suazo Perez v. Mukasey*, 512 F.3d 1222, 1225 (9th Cir. 2008) (applying 18 U.S.C. § 16(a), which defines "crime of violence" as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another"). These cases are not relevant to our analysis here. Aggravated assault is an enumerated offense under the Sentencing Guidelines, and " 'enumerated offenses . . . are always classified as "crimes of violence," regardless of whether the prior offense expressly has as an element the use, attempted use, or threatened use of physical force against the person of another.' " *United States v. Bolanos-Hernandez*, 492 F.3d 1140, 1146 (9th Cir. 2007) (quoting USSG, app. C, vol. II, amd. 658, at 401-02 (Nov. 1, 2003)).

under § 2L1.2 of the Guidelines involves a criminal assault accompanied by the aggravating factors of either the intent to cause serious bodily injury to the victim or the use of a deadly weapon." *United States v. Palomino Garcia*, 606 F.3d 1317, 1332 (11th Cir. 2010) (relying on most states' definitions of aggravated assault, as well as learned treatises and the Model Penal Code).

**[7]** We agree with the Eleventh Circuit that (1) intent to cause serious bodily injury, and (2) use of a deadly weapon to attempt to cause bodily injury (serious or not), are both generic aggravating factors. Arizona criminalizes additional aggravating factors, such as entering the private home of another with the intent to commit the assault, Ariz. Rev. Stat. § 13-1204(A)(5), and the status of the victim (e.g., police officers, firefighters, teachers, health care practitioners, prosecutors, state or municipal park rangers, and public defenders), *id.* § 13-1204(A)(8).**⁸** There is no need for us to decide whether the numerous other factors enumerated in the Arizona statute are coextensive with the generic offense, because the record of conviction demonstrates that Gomez-Hernandez's attempted aggravated assault conviction necessarily rested on the specific intent to use a deadly weapon in carrying out the assault.

**[8]** Gomez-Hernandez conceded that the offense involved a deadly weapon or dangerous instrument. In particular, he pled guilty to a dangerous felony allegation, which requires "the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument or the intentional or knowing infliction of serious physical injury upon another," Ariz. Rev. Stat. § 13-604(P) (2001). The indictment made clear which of

---

**⁸**Because it is not entirely clear which subsection of Ariz. Rev. Stat. § 13-1203 applies to Gomez-Hernandez's Arizona conviction, we consider the entire statute. *See United States v. Fierro-Reyna*, 466 F.3d 324, 327 (5th Cir. 2006) ("We look only to the particular subdivision of the statute under which the defendant was convicted.").

the two prongs was involved, as it alleged that he "us[ed] a carpet knife/razor, a deadly weapon or dangerous instrument." And Gomez-Hernandez admitted during the plea colloquy that he pointed a knife at G.R. at the same time he cut A.R. with a knife.[9]

**[9]** On this record, it is clear that his conviction for attempted aggravated assault rested on the specific intent to carry out a generic aggravating factor, namely, the use of a deadly weapon. *See Aguila-Montes de Oca*, 655 F.3d at 936 ("[T]he purpose of the modified categorical approach is to determine (1) what facts the state conviction necessarily rested on and (2) whether these facts satisfy the elements of the generic offense.").

IV

**[10]** The district court properly applied a sixteen-level enhancement under USSG § 2L1.2(b)(1)(A)(ii) based on Gomez-Hernandez's deportation following his Arizona conviction for attempted aggravated assault. The sentence imposed by the district court is therefore

**AFFIRMED.**

---

[9]Arizona defines "deadly weapon" as "anything designed for lethal use," Ariz. Rev. Stat. § 13-105(13) (2001), and "dangerous instrument" as "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury," *id.* § 13-105(11). "A knife is a deadly weapon." *State v. Williams*, 515 P.2d 849, 850-51 (Ariz. 1973); *see also* Model Penal Code § 210.0(4) ("'[D]eadly weapon' means any firearm or other weapon, device, instrument, material or substance, whether animate or inanimate, which in the manner it is used or is intended to be used is known to be capable of producing death or serious bodily injury.").