**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | No. 21-50088 |
| v. | D.C. No. 3:19-cr-05093-LAB-1 |
| JACINTO VICTOR ALVAREZ, AKA Jacinto Alvarez, AKA Jasinto Alvarez, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted September 2, 2022
Pasadena, California

Filed February 16, 2023

Before: Milan D. Smith, Jr. and Ryan D. Nelson, Circuit Judges, and Gershwin A. Drain,[*] District Judge.

Opinion by Judge R. Nelson

---

[*] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

**SUMMARY[**]**

**Criminal Law**

The panel affirmed a criminal judgment in a case in which Jacinto Alvarez moved to dismiss an indictment charging him with illegal reentry under 8 U.S.C. § 1326, arguing that the underlying removal order was fundamentally unfair because his prior assault conviction under section 2903.13(A) of the Ohio Revised Code was not a crime of violence and thus not an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

Alvarez first contended that his assault conviction is not a crime of violence because section 2903.13(A)'s mens rea requirement for attempt crimes is broader than the mens rea requirement for the "attempted use . . . of physical force" under 8 U.S.C. § 16(a).  The minimum mens rea required for attempt crimes under section 2903.13(A) is "knowledge."  Alvarez argued that the court must compare section 2903.13(A)'s attempt crime (including its mens rea requirement) to the generic federal definition of attempt, which he contended requires specific intent, or purpose.  Because purpose is a higher mens rea than knowledge, Alvarez maintained that section 2903.13(A) criminalizes conduct that § 16(a) does not.  The panel wrote that Alvarez's argument rests on a critical error:  the court compares section 2903.13(A) not to the generic federal definition of attempt, but to the crime of violence definition in § 16(a).  The panel wrote that this court's precedent

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

answers the question whether "knowledge" is a sufficient mens rea under the crime of violence definition in § 16(a). The panel disagreed with Alvarez's contention that knowledge is not sufficient for "attempted use" because common law attempt requires specific intent. Under this court's precedent, "knowledge" is a sufficient mens rea for the crime of violence definition as a whole, including "attempted uses" of physical force. Accordingly, the knowledge mens rea requirement for attempt under section 2903.13(A) does not make it overbroad.

Alvarez also argued that his prior offense is not a crime of violence because section 2903.13(A) does not require "violent" physical force but can be violated by offensive or de minimis contact. Noting that Alvarez must show a realistic probability, not a theoretical possibility, that Ohio would apply the statute to de minimis contact, the panel held that Alvarez has not done so. The panel explained that the text of section 2903.13(A) only criminalizes force capable of causing physical pain or injury, and held that the type of conduct to which section 2903.13(A) has been applied by Ohio courts is force capable of causing physical pain or injury.

The panel therefore concluded that section 2903.13(a) is a crime of violence under § 16(a), it thus qualifies as an aggravated felony under § 1101(a)(43)(F), and Alvarez's removal order was not fundamentally unfair.

## COUNSEL

Kara L. Hartzler (argued), Federal Defenders of San Diego Inc., San Diego, California, for Defendant-Appellant.

Zachary J. Howe (argued), Charlotte E. Kaiser, and D. Benjamin Holley, Assistant United States Attorneys; Daniel E. Zipp, Appellate Section Chief; Randy S. Grossman, United States Attorney; Office of the United States Attorney, Criminal Division, United States Department of Justice, San Diego, California; for Plaintiff-Appellee.

## OPINION

R. NELSON, Circuit Judge:

Under the Immigration and Nationality Act (INA), an illegal alien who has been convicted of an aggravated felony is subject to expedited removal. 8 U.S.C. § 1228. A crime can qualify as an aggravated felony in several ways, one of which is by satisfying the INA's definition of a "crime of violence." We address whether section 2903.13(A) of the Ohio Revised Code—an assault statute—categorically fits the crime of violence definition. We agree with the Sixth Circuit that it does.

I

Jacinto Alvarez came to the United States and settled in Ohio. In 2007, a jury convicted Alvarez of felonious assault on a peace officer under section 2903.13(A) of the Ohio Revised Code and misdemeanor resisting arrest. Alvarez was sentenced to eighteen months in prison for the assault with six months concurrent for resisting arrest.

While Alvarez was in prison, he was served with a "Notice of Intent to Issue a Final Administrative Removal Order." The notice alleged that Alvarez was a Mexican citizen in the country illegally who had been convicted of an aggravated felony—assaulting a police officer under section 2903.13(A)—and was thus removable. The notice alleged that his conviction qualified as an aggravated felony because it was a crime of violence under the INA.

Alvarez signed the notice and checked a box indicating that he wished to contest his removal, but he never did. The final removal order was entered, and after Alvarez finished his prison term, he was removed to Mexico.

Alvarez attempted to reenter the country illegally several times. After his first attempt, Alvarez pled guilty to illegal reentry, was sentenced to twenty-one months in prison, and was deported upon release. He later returned to the United States and pled guilty to misdemeanor illegal entry, was sentenced to three months in custody, and was then deported. He attempted to reenter again and pled guilty to felony illegal reentry, was sentenced to twenty-four months in prison, and was again deported.

Alvarez most recently attempted to reenter the country in 2019. Once again, he was caught, arrested, and charged with illegal reentry under 8 U.S.C. § 1326. Alvarez moved to dismiss the indictment, arguing that his section 2903.13(A) assault conviction was not an aggravated felony. The district court denied Alvarez's motion, holding that Alvarez's section 2903.13(A) conviction was an aggravated felony and that he was not prejudiced by any defects in his deportation proceeding. The district court denied Alvarez's motion for reconsideration as well.

Alvarez negotiated a conditional plea that allowed him to appeal the district court's denial of both motions.  He was sentenced to forty months in prison and three years of supervised release.  This timely appeal followed.

## II

We have jurisdiction under 28 U.S.C. § 1291 and review the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326(d) de novo.  *United States v. Martinez-Hernandez*, 932 F.3d 1198, 1202 (9th Cir. 2019).  "We review questions of law de novo, including whether a state statutory crime qualifies as an aggravated felony . . . ." *Jauregui-Cardenas v. Barr*, 946 F.3d 1116, 1118 (9th Cir. 2020).  We review a district court's denial of a motion to reconsider for an abuse of discretion.  *See Lona v. Barr*, 958 F.3d 1225, 1229 (9th Cir. 2020).

## III

When an illegal alien "has been convicted of an aggravated felony, the Attorney General may commence deportation proceedings."  *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000) (citing 8 U.S.C. § 1228(b)).   These expedited removal proceedings commence "when an issuing Service officer determines that sufficient evidence supports removal and serves the alien with a Notice of Intent."  *Id.* (citing 8 C.F.R. § 238.1(b)(1)).

Alvarez moved to dismiss his indictment for illegal reentry under § 1326(d).  That provision allows an alien to challenge the validity of his removal order if he shows that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial

review; and (3) the entry of the order was fundamentally unfair." § 1326(d). To successfully challenge his removal order, Alvarez must satisfy all three requirements. *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1620–21 (2021).

Under the third prong of § 1326(d), "[a]n underlying removal order is 'fundamentally unfair' if: (1) [a defendant's] due process rights were violated by defects in [the] underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (second alteration in original) (citation omitted). An alien can show that his due process rights were violated by defects in his deportation proceeding if he shows that his underlying state conviction was not, in fact, an aggravated felony. *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015).

An aggravated felony includes "a crime of violence . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). A "crime of violence" is defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 16(a). As long as the underlying offense requires one of the specified uses of force—actual, attempted, or threatened—it qualifies as a crime of violence. *See United States v. Ladwig*, 432 F.3d 1001, 1005 (9th Cir. 2005).

To determine whether Alvarez's Ohio assault conviction under section 2903.13(A) is a crime of violence, we apply the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 600–02 (1990). Under this approach, we determine whether "even the least egregious conduct [section 2903.13(A)] covers" is encompassed by the crime

of violence definition in § 16(a).[1]  *United States v. Walton*, 881 F.3d 768, 771 (9th Cir. 2018) (quoting *United States v. Lopez-Solis*, 447 F.3d 1201, 1206 (9th Cir. 2006)).

Section 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."  Alvarez argues that this Ohio statute criminalizes conduct that the crime of violence definition does not reach, and is therefore not an aggravated felony.  The Sixth Circuit has already concluded that section 2903.13(A) is a crime of violence.  *United States v. Raymore*, 965 F.3d 475, 487–91 (6th Cir. 2020).  We agree.

## A

Alvarez first contends that his assault conviction is not a crime of violence because section 2903.13(A)'s mens rea requirement for attempt crimes is broader than the mens rea requirement for the "attempted use . . . of physical force" under § 16(a).[2]  The minimum mens rea required for attempt crimes under section 2903.13(A) is "knowledge."  Ohio Rev. Code §§ 2923.02(A), 2901.22(B).  Alvarez argues that we must compare section 2903.13(A)'s attempt crime (including its mens rea requirement) to the generic federal definition of attempt, which he contends requires specific intent, or purpose.  Because purpose is a higher mens rea

---

[1] Because the Government agrees with Alvarez that section 2903.13(A) is indivisible as between attempted and completed crimes, we assume *arguendo* that section 2903.13(A) is indivisible and that we need not apply the modified categorical approach.  *See Mathis v. United States*, 579 U.S. 500, 505–06 (2016).

[2] Because the parties agree that section 2903.13(A) is categorically overbroad as to "use" and "threatened use," we address only whether section 2903.13(A) has as an element the "attempted use" of physical force.

than knowledge, Alvarez concludes section 2903.13(A) criminalizes conduct that § 16(a) does not.

1

Alvarez's argument rests on a critical error: in this case, we compare section 2903.13(A) not to the generic federal definition of attempt, but to the crime of violence definition in § 16(a). In *United States v. Door*, 917 F.3d 1146, 1152–53 (9th Cir. 2019), we addressed whether a Washington state conviction for felony harassment qualifies as a crime of violence under the United States Sentencing Guidelines.[3] The criminal defendant argued that his Washington state conviction was not a crime of violence because the state statute incorporated aiding and abetting liability, and Washington's version of aiding and abetting was "broader than the federal definition of aiding and abetting." *Id.* at 1152.

We disagreed because the categorical approach analysis differs depending on what type of crime of violence is alleged. *Id.* at 1149. Under the Sentencing Guidelines, a prior offense can be a crime of violence because it is one of the enumerated offenses listed as such or because it "has as

---

[3] *Door* involved the definition from the United States Sentencing Guidelines instead of § 16(a). But "[t]he key language in this definition—'the use, attempted use, or threatened use of physical force against the person of another'—is used in a number of statutes and Guidelines sections, including 18 U.S.C. § 16(a) (defining 'crime of violence'), the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i) (defining the term 'violent felony'); and U.S.S.G. § 2L1.2 app. 2 (establishing a sentencing enhancement for prior crimes of violence)." *United States v. Perez*, 932 F.3d 782, 785 n.2 (9th Cir. 2019). Accordingly, cases interpreting and applying this language in contexts other than § 16(a) are equally instructive. *See id.*

an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at 1150 (citation omitted). When the prior offense is one of the enumerated offenses, we ask whether "the elements of one of the generic federal crimes listed in that clause fully subsume the elements of the crime of conviction." *Id.* at 1151. But when the prior offense is alleged to have "as an element the use, attempted use, or threatened use of physical force against the person of another," we only ask whether the prior offense does in fact have one of those elements. *See id.* at 1150–51 (citation omitted).

This distinction applies to the aggravated felony analysis in INA cases like this one as well. In *Door*, we discussed how this framework applied in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), an INA case. We explained that the analysis in *Valdivia-Flores* "involved comparing the elements of the Washington drug trafficking crime with the generic federal offense of drug trafficking because 'drug trafficking' is listed in the INA as an 'aggravated felony.'" *Door*, 917 F.3d at 1153 (citation omitted). "In other words, the categorical analysis employed in *Valdivia-Flores* mirrors the inquiry under the *enumerated offenses* clause of" the sentencing guidelines. *Id.* (citation omitted).

We again applied this framework in *Amaya v. Garland*, 15 F.4th 976 (9th Cir. 2021), another INA case. We explained that a prior offense can qualify as an aggravated felony by matching one of the statute's enumerated offenses. *See id.* at 986 n.9. Or, a prior offense can qualify as an aggravated felony because it matches "a *class* of offenses defined by 'the use, attempted use, or threatened use of physical force.'" *Id.* at 985 (citation omitted). Unlike comparing a prior offense to one of the enumerated offenses,

which is "an exercise in mapping a state crime onto a federal crime," we "need not compare the elements of the crime of conviction with the elements of the generic federal crime when analyzing whether an offense qualifies as a crime of violence pursuant to" § 16(a). *Id.* at 985–86 (citations omitted).

Here, Alvarez's conviction under section 2903.13(A) is alleged to be an aggravated felony under the crime of violence definition for having "as an element the use, attempted use, or threatened use of physical force against the person or property of another." § 16(a). Thus, we must determine whether "knowledge"—the mens rea requirement for attempt under section 2903.13(A)—is broader than the mens rea requirement for the crime of violence definition in § 16(a); comparison to the generic federal definition of attempt is improper here. *Amaya*, 15 F.4th at 985–86; *Door*, 917 F.3d at 1150–53.

Alvarez contends that our decision in *United States v. Gomez-Hernandez*, 680 F.3d 1171 (9th Cir. 2012), says otherwise. *Gomez-Hernandez* involved an Arizona attempted aggravated assault conviction. *Id.* at 1176. After determining that the generic federal definition of attempt requires specific intent, we compared the Arizona statute to the generic federal definition and concluded that because "attempted aggravated assault under Arizona law covers only intentional conduct. . . . Arizona's attempted aggravated assault offense . . . does not encompass a lesser mens rea than the generic definition of aggravated assault." *Id.* at 1175–76.

Alvarez argues that under *Gomez-Hernandez*, an attempt crime must incorporate a specific intent mens rea to qualify as a crime of violence because the generic federal definition

of attempt requires specific intent.   But he is incorrect.
*Gomez-Hernandez* is consistent with the framework set forth
in *Door* and *Amaya*.   The attempted aggravated assault
statute in *Gomez-Hernandez* was allegedly a crime of
violence because attempted aggravated assault "is
specifically enumerated in the [Sentencing Guidelines] as a
crime of violence." *Id.* at 1174.   We noted that the attempted
aggravated assault conviction was *not* alleged to be a crime
of violence for having as an element the use, attempted use,
or threatened use of physical force.   *See id.* at 1177 n.7.
Thus, as *Door* and *Amaya* instruct, we properly compared
the prior offense to the generic federal definition because the
prior offense was allegedly a crime of violence as an
*enumerated* offense rather than an offense covered by the
crime of violence definition in § 16(a).   *See id.* at 1175–76;
*Amaya*, 15 F.4th at 985–86; *Door*, 917 F.3d at 1150–53.

2

The remaining question is whether "knowledge" is a
sufficient mens rea under the crime of violence definition in
§ 16(a).   Our precedent answers this question.   In *United
States v. Linehan*, 56 F.4th 693, 705 (9th Cir. 2022), the
defendant argued that if the "attempted use" element from
the crime of violence definition is the source of liability, the
court "must import a specific intent mens rea that is
associated with attempt offenses, so that a predicate offense
. . . that requires merely 'knowing' misconduct is
insufficient."   We rejected that argument because the crime
of violence definition already requires that the underlying
predicate offense have a mens rea of "knowledge or intent,
or at the very least extreme recklessness." *Id.* (citing *Borden
v. United States*, 141 S. Ct. 1817, 1825 (2017); *United States
v. Begay*, 33 F.4th 1081, 1093–94 (9th Cir. 2022) (en banc)).
Requiring "an *additional* and even *higher* mens rea" in the

crime of violence definition for "attempted uses" of force, we explained, "would confusingly layer multiple mens rea requirements into the same elements clause." *Id.* The "'attempted use' of force," we held, "does not also impose a further mens rea requirement beyond the one that the elements clause already requires." *Id.*

This holding tracks our precedent that "knowledge, or general intent, remains a sufficient mens rea to serve as the basis for a crime of violence." *United States v. Werle*, 877 F.3d 879, 882 (9th Cir. 2017) (per curiam); *see also Amaya*, 15 F.4th at 983 ("We have squarely held that 'knowledge' as defined in Washington satisfies 18 U.S.C. § 16(a).");[4] *United States v. Melchor-Meceno*, 620 F.3d 1180, 1186 (9th Cir. 2010) ("[T]o knowingly place another person in fear of imminent serious bodily harm . . . includes the requisite *mens rea* of intent for a crime of violence." (citing *United States v. Grajeda*, 581 F.3d 1186, 1197 (9th Cir. 2009)).

Alvarez argues that these cases do not apply because they compared the underlying crime to the "use" or "threatened use" definitions, while this case requires us to compare section 2903.13(A) to the "attempted use" definition. Alvarez contends that knowledge is not sufficient for "attempted use" because common law attempt requires specific intent.

We disagree. Our prior holdings that knowledge is enough were not limited to the "use" or "threatened use" of physical force, nor did we suggest that § 16(a)'s mens rea requirement differentiates between the "use, attempted use,

---

[4] We find no material difference between Washington's definition of knowledge and Ohio's definition of knowledge. *Compare* Wash. Rev. Code § 9A.08.010(1)(b) *with* Ohio Rev. Code § 2901.22(B).

or threatened use" of physical force.  *See Amaya*, 15 F.4th at 983; *Werle*, 877 F.3d at 882; *Melchor-Meceno*, 620 F.3d at 1186; *Grajeda*, 581 F.3d at 1197.  In these cases, we spoke in terms of the mens rea requirement for the crime of violence definition as a whole.  *Amaya*, 15 F.4th at 983 ("We have squarely held that 'knowledge' as defined in Washington satisfies 18 U.S.C. § 16(a)."); *Werle*, 877 F.3d at 882 ("[K]nowledge, or general intent, remains a sufficient mens rea to serve as the basis for a crime of violence."); *Melchor-Meceno*, 620 F.3d at 1184 ("[T]he predicate offense of menacing, a general intent crime, includes the requisite mens rea of intent for a crime of violence."); *Grajeda*, 581 F.3d at 1197 ("[The underlying statute] requires proof of sufficiently intentional conduct to satisfy the mens rea requirement for a crime of violence . . . .").[5]

Even if Alvarez is correct that these cases did not address the "attempted use" of physical force, *Linehan* eliminates any lingering doubt that knowledge is not a sufficient mens rea for the "attempted use" element of § 16(a).  In *Linehan*, we expressly addressed the "attempted use" element and rejected the argument that there is an additional, higher mens rea requirement for attempted uses of physical force under the crime of violence definition.  56 F.4th at 704–05.  We held that "knowledge" is a sufficient mens rea for the crime of violence definition as a whole, including "attempted uses"

---

[5] Alvarez also argues that these cases could not have held that knowledge is a sufficient mens rea under § 16(a) for the "attempted use" of physical force because under *Gomez-Hernandez*, 680 F.3d at 1175, attempt crimes require specific intent to qualify as crimes of violence.  But as discussed, *Gomez-Hernandez* is inapplicable here because it only analyzed whether the underlying crime was an enumerated offense.  *Id.* at 1174, 1177 n.7.

of physical force. *Id.* [6]

In sum, a crime with a mens rea of knowledge qualifies as a crime of violence under § 16(a). Accordingly, the knowledge mens rea requirement for attempt under section 2903.13(A) does not make it overbroad.

B

Alvarez also argues that his prior offense is not a crime of violence because section 2903.13(A) does not require "violent" physical force but can be violated by offensive or de minimis contact. Once again, we apply the categorical approach. "'[E]ven the least egregious conduct the statute covers must qualify' as a violent felony for a defendant's

---

[6] In *Linehan*, we concluded that even if "the 'attempted use' of force means that the predicate offense must require a mens rea commensurate with that required for attempt crimes," the underlying crime of transporting an explosive, 18 U.S.C. § 844(d), still has as an element the "attempted use" of physical force. 56 F.4th at 705–06. We reasoned that § 844(d) "does not require mere 'knowledge' of some bare facts, nor does it criminalize the mere knowing transportation or receipt of an explosive." *Id.* at 706. Instead, it requires "'knowledge or intent that [the explosive] *will be used* to kill, injure, or intimidate' a person or damage property. *Id.* (quoting § 844(d)). Thus, we held, "[a] person who acts with such knowledge is not engaged in innocent behavior" so "even on [the] mistaken view that 'attempted uses' of force require a higher mens rea," § 844(d) "contains a mens rea requirement that enables it to categorically qualify as an attempted use of force[.]" *Id.*

The same is true of section 2903.13(A). Like § 844(d), which requires knowledge that an explosive will be used to kill, injure, or intimidate, section 2903.13(A) criminalizes knowingly engaging in conduct that, if successful, would cause physical harm to another or to another's unborn. Ohio Rev. Code. §§ 2903.13(A), 2923.02(A). Thus, we conclude that section 2903.13(A) has as an element the "attempted use" of physical force even under this alternative "mistaken view." *See Linehan*, 56 F.4th at 705–06.

conviction under th[e] statute to count" as a crime of violence. *Walton*, 881 F.3d at 771 (quoting *Lopez-Solis*, 447 F.3d at 1206).

As we have discussed, a crime of violence requires "physical force against the person or property of another." § 16(a). The Supreme Court has held that "'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). De minimis contact is not enough. *Id.* at 139–40. *Johnson*, however, "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019). The standard is "force *capable* of causing physical pain or injury." *Id.* (quoting *Johnson*, 559 U.S. at 140). To determine "the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions." *Ortega-Mendez v. Gonzalez*, 450 F.3d 1010, 1016 (9th Cir. 2006).

Section 2903.13(A) states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Ohio defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." Ohio Rev. Code § 2901.01(A)(3). The question, then, is whether Ohio's definition of "physical harm" requires "force *capable* of causing physical pain or injury." *See Stokeling*, 139 S. Ct. at 554 (quoting *Johnson*, 559 U.S. at 140).

The Sixth Circuit has addressed this question and held that section 2903.13(A) "qualifies as a crime of violence."

*United States v. Evans*, 699 F.3d 858, 865–66 (6th Cir. 2012), *abrogated on other grounds by United States v. Havis*, 927 F.3d 382 (6th Cir. 2019) (en banc) (per curiam). The court in *Evans* reasoned that because a person can only cause or attempt to cause physical harm by "knowingly using or attempting to use physical force—i.e., force capable of causing physical injury," section 2903.13(A) "necessarily requires proof that a defendant knowingly used, or attempted to use, physical force capable of causing physical pain or injury." *Id.* at 863. Since *Evans*, the Sixth Circuit has reconfirmed that section 2903.13(A) is a crime of violence. *Raymore*, 965 F.3d at 490.

Alvarez urges us to diverge from the Sixth Circuit and hold that section 2903.13(A) is not a crime of violence because it reaches de minimis contact. To determine whether section 2903.13(A) reaches de minimis contact, we look not just to the language of the statute, but also to Ohio cases applying that statute. *Ortega-Mendez*, 450 F.3d at 1016. Alvarez argues that the Sixth Circuit in *Evans* overlooked several Ohio cases that he characterizes as applying section 2903.13(A) to de minimis contact.[7]

---

[7] *See State v. Birinyi*, Nos. 95680, 95681, 2011 WL 6151478, at *6 (Ohio Ct. App. Dec. 8, 2011) (spinning away from officer led to the officer falling and landing on the suspect's elbow and sustaining injury to the officer's rib cage); *State v. Weiss*, No. 09CA30, 2010 WL 3722275, at *5 (Ohio Ct. App. Sept. 20, 2010) (throwing water balloons at automobiles, cyclists, and pedestrians from several floors high); *In re R.A.M.*, No. 2010-L-011, 2010 WL 3492504, at *1–2 (Ohio Ct. App. Sept. 3, 2010) (striking a teacher twice "with force" on the buttocks with a book); *State v. Jackson*, No. L-04-1358, 2006 WL 513954, at *1 (Ohio Ct. App. Mar. 3, 2006) (driving away while officer was partially inside the vehicle, dragging the officer until he fell out); *In re Pollitt*, No. 00 CA 687, 2000 WL 1528663, at *1–3 (Ohio Ct. App. Oct. 10, 2000) (hitting teacher with lowered shoulder); *State v. Smith*, No. 97APA07-

Alvarez argues that our precedent finds that the actions in these cases are de minimis and do "not rise to the level of a 'crime of violence' within the meaning of 18 U.S.C. § 16(a)." *Ortega-Mendez*, 450 F.3d at 1017.

We decline to split with the Sixth Circuit. Alvarez must show a "realistic probability, not a theoretical possibility," *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007), that Ohio would apply section 2903.13(A) to de minimis contact rather than "force *capable* of causing physical pain or injury," *Stokeling*, 139 S. Ct. at 554 (quoting *Johnson*, 559 U.S. at 140). He has not done so.

1

First, the text of section 2903.13(A) only criminalizes force capable of causing physical pain or injury. The statute states that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." "Physical harm" is defined as "injury, illness, or other physiological impairment, regardless of its gravity or duration." Ohio Rev. Code § 2901.01(A)(3). We agree with the Sixth Circuit's textual analysis that a person can only cause or attempt to cause physical harm, that is, "injury, illness, or other physiological impairment," by "knowingly

---

874, 1998 WL 180563, at *3 (Ohio Ct. App. Apr. 14, 1998) (throwing urine in prison officer's eyes and mouth); *State v. Robinson*, No. CA-6649, 1985 WL 6513, at *2–3 (Ohio Ct. App. Sept. 30, 1985) (throwing urine on a person).

Alvarez also cites *State v. Conliff*, 401 N.E.2d 469, 476–77 (Ohio Ct. App. 1978) (Whiteside, J., concurring in part and dissenting in part), and *State v. Kienzle*, No. 2009 AP 03 0015, 2010 WL 1839443, at *1 (Ohio Ct. App. May 5, 2010). We need not consider either case. The portion of *Conliff* that Alvarez cites comes from a concurrence, and *Kienzle* does not involve a conviction under section 2903.13(A).

using or attempting to use physical force—i.e., force capable of causing physical injury." *Evans*, 699 F.3d at 863–65; *see also United States v. Gatson*, 776 F.3d 405, 410–11 (6th Cir. 2015) (Force that causes injury, illness, or other physiological impairment, regardless of its gravity or duration "is (to some extent, by definition) force 'capable of causing physical injury or pain to another person.'" (quoting *Johnson*, 559 U.S. at 140)).

This reasoning aligns with our decision in *United States v. Juvenile Female*, 566 F.3d 943, 946–47 (9th Cir. 2009). In that case, we considered whether an assault resulting in bodily injury under 18 U.S.C. § 111 is categorically a crime of violence. *Id.* We held that a defendant charged with assault resulting in bodily injury "necessarily must have committed an act of force in causing the injury" and so it was a crime of violence under § 16(a). *Id.* at 948. So too here. A defendant convicted under section 2903.13(A) for causing or attempting to cause physical harm, defined as "injury, illness, or other physiological impairment," Ohio Rev. Code § 2901.01(A)(3), also necessarily must have committed an act of force capable of causing physical injury. *See Juvenile Female*, 566 F.3d at 948.

The statute's inclusion of the phrase "regardless of its gravity or duration" does not alter our analysis. *See* Ohio Rev. Code § 2901.01(A)(3). In *Stokeling*, 139 S. Ct. at 554, the Supreme Court emphasized that the word "capable" in the *Johnson* standard has meaning—it means that the standard "does not require any particular degree of likelihood or probability that the force will cause physical pain or injury; only potentiality." The Court distinguished between mere offensive touching and "minor uses of force that might not constitute violence in the generic sense," but "could nevertheless qualify as predicate offenses." *Id.*

(internal quotations and citation omitted). In so doing, the majority discussed Justice Scalia's concurrence in *United States v. Castleman*, 572 U.S. 157, 173 (2014), which "concluded that force as small as 'hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling' . . . satisfied *Johnson*'s definition" and that "[n]one of those actions bears any resemblance to mere offensive touching, and all of them are capable of causing pain or injury." *Stokeling*, 139 S. Ct. at 554 (quoting *Castleman*, 572 U.S. at 182 (Scalia, J., concurring)). "This understanding of 'physical force,'" the Court stated, "is consistent with our holding today." *Id.* Thus, under *Stokeling*, section 2903.13(A) requires physical force because "knowingly caus[ing] or attempt[ing] to cause physical harm"—even of minimal gravity or duration—is necessarily capable of causing physical pain or injury.

2

Second, the Ohio cases Alvarez cites do not show that Ohio courts apply section 2903.13(A) to actions involving less force than that necessary for a crime of violence. *See Flores-Vega v. Barr*, 932 F.3d 878, 883 (9th Cir. 2019). Using a book to strike a person "with force," *R.A.M.*, 2010 WL 3492504, at *1–2, resisting arrest, *Birinyi*, 2011 WL 6151478, at *6, dragging a person from a vehicle, *Jackson*, 2006 WL 513954, at *1, and lowering one's shoulder to hit another person, *Pollitt*, 2000 WL 1528663, at *1–3, all involve force capable of causing physical pain or injury. *See Stokeling*, 139 S. Ct. at 554.

Alvarez's remaining cases involve throwing water balloons, *Weiss*, 2010 WL 3722275, at *5, and throwing urine, *Robinson*, 1985 WL 6513, at *2–3; *Smith*, 1998 WL 180563, at *3. But the specific facts of those cases also involve more than mere de minimis contact.

In *Weiss*, 2010 WL 3722275, at *1, the defendants threw water balloons from a balcony several floors high and targeted people on bicycles, as well as automobiles and pedestrians. Throwing water balloons at cyclists and others from several stories high is capable of causing physical pain or injury. *See Stokeling*, 139 S. Ct. at 554. Some language in *Weiss* suggests that section 2903.13(A) was enacted to prohibit simple assault and battery, including "offensive touching." 2010 WL 3722275, at *4. But a more recent published opinion by another Ohio appeals court has rejected this conclusion, explaining that *Weiss* relied on old treatises that "say little of [section] 2903.13(A)'s requirement of physical harm" and conflicted with "other Ohio Appellate Courts" requiring "physical harm as the statute states, rather than simply requiring offensive touching." *State v. Sepulveda*, 71 N.E.3d 1240, 1248 (Ohio Ct. App. 2016). Whether or not *Weiss*'s interpretation of section 2903.13(A) remains viable after *Sepulveda*, the actual conduct at issue in *Weiss*—throwing water balloons from several floors high at cyclists and others—involved more than de minimis contact.

Likewise, Alvarez's cases about thrown urine involved more than de minimis contact. In *Smith*, 1998 WL 180563, at *3, an officer "needed medical treatment" after he had urine thrown in his face, which "burned" his eyes. And in *Robinson*, 1985 WL 6513, at *3, there was "ample evidence" that a disgruntled terminated employee, who screamed at a coworker and threw urine at her, "attempted to cause physical harm." Both cases analyzed whether the conduct at issue could cause physical harm, not just de minimis contact. *Smith*, 1998 WL 180563, at *3 (concluding that the evidence was "sufficient to establish the physical harm element"); *Robinson*, 1985 WL 6513, at *3 (concluding that the jury

could find that the appellant "attempted to cause physical harm as charged").

Alvarez contends that our decision in *Ortega-Mendez* requires that we find the uses of force from these Ohio cases insufficient to constitute a crime of violence. We disagree. There, we held that a California battery statute was not a crime of violence because it criminalized "mere offensive touching." *Ortega-Mendez*, 450 F.3d at 1017–18, 1021. In reaching that conclusion, we listed "hitting another with a thrown missile" and "throwing a cup of urine" as examples of merely offensive touching that was not violent.[8] *Id.* at 1017 (citing *Singh*, 386 F.3d at 1232; *People v. Pinholster*, 842 P.2d 571, 622 (Cal. 1992)). But contrary to Alvarez's argument, *Ortega-Mendez*'s inclusion of these examples—which were drawn from other cases involving different facts and statutes from other states—does not transform the conduct in Alvarez's cited cases from Ohio into de minimis contact. Again, no "particular degree of likelihood or probability that the force used will cause physical pain or injury" is required; "only potentiality." *Stokeling*, 139 S. Ct. at 554. And as discussed, each of Alvarez's decisions applying section 2903.13(A) involved conduct "*capable* of causing physical pain or injury." *Id.* (quoting *Johnson*, 559 U.S. at 140).

---

[8] Because *Ortega-Mendez* was decided without the benefit of the Supreme Court's instruction in *Johnson* and *Stokeling*, we did not consider whether there was "force *capable* of causing physical pain or injury." *Stokeling*, 139 S. Ct. at 554 (quoting *Johnson*, 559 U.S. at 140). Instead, we asked only whether the force was "violent in nature." *Ortega-Mendez*, 450 F.3d at 1016 (citing *Singh v. Ashcroft*, 386 F.3d 1228, 1233 (9th Cir. 2004)).

This conclusion does not, as Alvarez asserts, eviscerate case law excluding de minimis contact from the crime of violence definition. Physical force is still required, and the Supreme Court continues to distinguish "'minor uses of force' that might not 'constitute violence in the generic sense'" from "mere offensive touching." *Id.* (quoting *Castleman*, 572 U.S. at 165). Minor uses of force, such as "hitting, slapping, shoving, grabbing, pinching, biting, and hair pulling," bear no "real resemblance to mere offensive touching, and all of them are capable of causing physical pain or injury." *Id.* (quoting *Castleman*, 572 U.S. at 182 (Scalia, J., concurring)). De minimis contact that cannot cause physical pain or injury remains insufficient under § 16(a).

Thus, along with finding that the text of section 2903.13(A) only reaches contact capable of causing physical pain or injury, we also hold that the type of conduct to which section 2903.13(A) has been applied by Ohio courts is force capable of causing physical pain or injury. *See Stokeling*, 139 S. Ct. at 554; *Johnson*, 559 U.S. at 140.[9]

IV

For these reasons, we conclude that section 2903.13(A) is a crime of violence under § 16(a). It thus qualifies as an aggravated felony, 8 U.S.C. § 1101(a)(43)(F), and Alvarez's removal order was not fundamentally unfair, 8 U.S.C. § 1326(d)(3). Because Alvarez's removal order was not

_____

[9] We need not address whether Alvarez suffered prejudice because we find his due process rights were not violated by defects in the underlying deportation proceeding. *Ubaldo-Figueroa*, 364 F.3d at 1048. Because Alvarez must satisfy all three of § 1326(d)'s requirements to succeed on his claim, *Palomar-Santiago*, 141 S. Ct. at 1620–21, we also need not reach his arguments concerning § 1326(d)(1) and § 1326(d)(2).

fundamentally unfair, we need not determine whether he
satisfied § 1326(d)'s first two requirements.

**AFFIRMED.**