# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 23, 2025

Lyle W. Cayce
Clerk

No. 24-50213
consolidated with
No. 24-50224

United States of America,

*Plaintiff—Appellee*,

*versus*

Ismael Adan Ortiz-Rodriguez,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 4:23-CR-257-1,
4:23-CR-278-1

Before Richman, Willett, and Douglas, *Circuit Judges*.
Priscilla Richman, *Circuit Judge*:

Ismael Adan Ortiz-Rodriguez was removed from the United States by DHS agents pursuant to expedited removal proceedings that began in 2017. In 2023, Ortiz-Rodriguez was convicted of Illegal Reentry into the United States under 8 U.S.C. § 1326(a). Prior to trial, Ortiz-Rodriguez moved to dismiss his indictment by collaterally attacking his 2017 deportation order under 8 U.S.C. § 1326(d). The district court denied his motion.

24-50213
c/w No. 24-50224

On appeal, Ortiz-Rodriguez argues that he satisfied § 1326(d) because his 2017 expedited removal proceedings involved an unknowing and involuntary waiver of judicial review and violated his due process rights by erroneously determining that he had committed an aggravated felony. We disagree, and we affirm the district court's judgment.

**I**

Ortiz-Rodriguez is not a citizen of the United States but has lived in the United States for most of his life. In February 2017, Ortiz-Rodriguez pleaded guilty in Texas state court to "Evading Arrest or Detention" with a vehicle, a third-degree felony.[1] Ortiz-Rodriguez was sentenced to two years of imprisonment, but before his sentence ended, DHS began expedited removal proceedings pursuant to 8 U.S.C. § 1228(b). In October 2017, DHS agents served Ortiz-Rodriguez with a "Notice of Intent to Issue a Final Administrative Removal Order" (also known as a "Notice of Intent" or "I-851"), which informed him that he was deportable because his evading-arrest conviction qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F).

In addition to summarizing the expedited removal procedures,[2] the form notified Ortiz-Rodriguez that he could be represented by counsel (at his own expense), explained that he had the right to file a petition for review of the order in a United States Court of Appeals, and provided checkboxes where Ortiz-Rodriguez could contest his deportability or request withholding of removal on various grounds. The form is reproduced in full in the Appendix.[3]

---

[1] *See* Tex. Penal Code § 38.04.

[2] *See also Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013) (per curiam) (summarizing expedited removal procedures).

[3] *Infra* at 27-28.

Agents "explained and/or served" the Notice of Intent to Ortiz-Rodriguez in English, and Ortiz-Rodriguez signed to acknowledge that he received the Notice of Intent. Ortiz-Rodriguez also affixed his signature and printed his name within another section, beneath three checked boxes, which stated:

> [(1)] I Do Not Wish to Contest and/or to Request Withholding of Removal[,] [which was the heading of the section and was in bold font.]

> [(2)] I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to Mexico[.] ["Mexico" was handwritten.]

> [(3)] I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right.

DHS then prepared a Final Administrative Removal Order, served the order on Ortiz-Rodriguez, and removed him in January 2018. At the time, Ortiz-Rodriguez did not challenge or appeal the expedited removal.

Following his removal, Ortiz-Rodriguez reentered the United States twice, and he pleaded guilty both times to illegal reentry pursuant to 8 U.S.C. § 1326. For each removal proceeding, DHS reinstated the October 2017 removal order and deported him. Then, in May 2023, Border Patrol agents found Ortiz-Rodriguez in Texas, and Ortiz-Rodriguez "freely and readily admitted" that he was "present in the United States without any immigration documents allowing [him] to be in or remain in the United States." A federal grand jury indicted Ortiz-Rodriguez on one count of violating 8 U.S.C. § 1326(a), which provides that "any alien who . . . has been . . . deported, . . . and thereafter . . . enters, attempts to enter, or is at

any time found in, the United States" without permission "shall be fined under Title 18, or imprisoned not more than 2 years, or both." [4]

Ortiz-Rodriguez waived his right to a jury and agreed to a stipulated bench trial. Ortiz-Rodriguez also moved to dismiss the indictment under 8 U.S.C. § 1326(d), which allows for a collateral attack on the validity of a prior deportation order if certain prerequisites are met. [5] Ortiz-Rodriguez attacked his 2017 expedited removal proceedings, arguing that his evading-arrest felony conviction should no longer qualify as an aggravated felony based on a 2018 Supreme Court decision and subsequent Fifth Circuit decision that resulted in Texas's evading arrest offense no longer qualifying as a crime of violence that would support removal. [6]

The district court denied Ortiz-Rodriguez's motion to dismiss, holding that Ortiz-Rodriguez "failed to show that the [2017 expedited removal] procedure denied him judicial review as required by § 1326(d)." Ortiz-Rodriguez was found guilty and sentenced to fifty-one months of imprisonment. Ortiz-Rodriguez's notice of appeal was untimely, but the district court granted his motion for an extension of time to file a notice of appeal, [7] and Ortiz-Rodriguez appealed within the extended filing window.

This appeal is consolidated with Ortiz-Rodriguez's appeal in case No. 24-50224, in which Ortiz-Rodriguez appealed from the revocation of a three-year term of supervised release imposed as a result of a conviction in a prior § 1326 prosecution. The district court revoked Ortiz-Rodriguez's

---

[4] 8 U.S.C. § 1326(a).

[5] *Id.* § 1326(d).

[6] *See Sessions v. Dimaya*, 584 U.S. 148 (2018); *Diaz Esparza v. Garland*, 23 F.4th 563, 565-66 (5th Cir. 2022).

[7] *See* Fed R. App. P. 4(b)(1), (4).

24-50213
c/w No. 24-50224

supervised release after Ortiz-Rodriguez reentered the United States in May 2023 because the illegal reentry violated the terms of his supervised release. The district court sentenced Ortiz-Rodriguez to fourteen months of imprisonment.  Ortiz-Rodriguez makes no separate arguments concerning the revocation and sentence at issue in case No. 24-50224.

## II

An alien violates 8 U.S.C. § 1326(a) by returning to the United States without permission following removal.[8]  Congress enacted 8 U.S.C. § 1326(d) in response to a Supreme Court decision that held, "'[A]t a minimum,' 'a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review.'"[9]  Accordingly, § 1326(d) permits a collateral attack on the underlying removal order, which serves as an element of the § 1326(a) offense.[10]  The alien can challenge either a reinstatement order or the original deportation order.[11]  Under § 1326(d), "an alien may not challenge the validity of the [underlying] deportation order" unless they show that three elements are met: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of

---

[8] *United States v. Palomar-Santiago*, 593 U.S. 321, 324 (2021); 8 U.S.C. § 1326(a).

[9] *See Palomar-Santiago*, 593 U.S. at 324 (alterations in original) (quoting and discussing *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987)).

[10] *Id.* at 324-25; *see* 8 U.S.C. § 1326.

[11] *See United States v. Charleswell*, 456 F.3d 347, 352 (3d Cir. 2006); *see Ramirez-Molina v. Ziglar*, 436 F.3d 508, 514 & n.9 (5th Cir. 2006).

the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."[12]

The district court denied Ortiz-Rodriguez's motion to dismiss because he "failed to show" that the 2017 expedited removal "denied him judicial review" under (d)(2). "We review de novo a district court's denial of a motion to dismiss the indictment, including any underlying constitutional claims," and we accept factual findings unless they are "clearly erroneous."[13]

Ortiz-Rodriguez has not satisfied (d)(2) or (d)(3), so his challenge fails.

## A

For Ortiz-Rodriguez to successfully challenge his 2017 expedited removal, he must show that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review."[14] Ortiz-Rodriguez has not made this showing because (1) he could have appealed his expedited removal to this court, and (2) he has not shown that any waiver of the right to appeal was unknowing or involuntary.

## 1

Ortiz-Rodriguez had the ability to seek judicial review of his 2017 expedited removal in this court but did not do so. According to the Notice of Intent, Ortiz-Rodriguez was deemed deportable under 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that "[a]ny alien who is convicted of an

---

[12] 8 U.S.C. § 1326(d).

[13] *United States v. Cordova-Soto*, 804 F.3d 714, 718 (5th Cir. 2015).

[14] 8 U.S.C. § 1326(d)(2).

aggravated felony at any time after admission is deportable."[15]  Though 8 U.S.C. § 1252(a)(2) generally bars judicial review of "any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii)," it allows for judicial review of "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals."[16]  This includes expedited removal orders.[17]  Ortiz-Rodriguez's right to judicial review was explained in the Notice of Intent:

> You have the right to remain in the United States for 14 calendar days so that you may file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals as provided for in section 242 of the Act, 8 U.S.C. 1252.  You may waive your right to remain in the United States for this 14-day period.  If you do not file a petition for review within this 14-day period, you will still be allowed to file a petition from outside of the United States so long as that petition is filed with the appropriate U.S. Circuit Court of Appeals within 30 calendar days of the date of your final order of removal.

Ortiz-Rodriguez's signed form also includes a completed checkbox reading: "I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review.  I do not wish this opportunity.  I waive this right."  Because Ortiz-Rodriguez could have appealed his expedited removal to this court, he has not shown that the expedited removal proceedings deprived him of the opportunity for judicial review.

---

[15] *Id.* § 1227(a)(2)(A)(iii).

[16] *Id.* § 1252(a)(2).

[17] *See Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 186-88 (5th Cir. 2013) (per curiam) (discussing jurisdictional requirements for review of an expedited removal order).

**2**

Notwithstanding his right to file a petition for review, Ortiz-Rodriguez argues that he still suffered a deprivation of judicial review because he made an unknowing and involuntary waiver of his right to appeal. In *United States v. Mendoza-Lopez*,[18] the Supreme Court explained that where "waivers of [] rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."[19] Under our precedents, Ortiz-Rodriguez has the burden of showing that his waiver was deficient: "Where, as here, the government has produced a written and signed stipulation to removal and waiver of rights, the burden rests with the defendant to show that the stipulation and waiver was invalid."[20]

Ortiz-Rodriguez broadly argues that his "waiver was not considered and intelligent" because it "falsely misled" him first by "telling him that his Texas escape conviction was categorized as an aggravated felony" and second by "not tell[ing] [him] that he could challenge that determination."

The Notice of Intent stated that Ortiz-Rodriguez was deportable "because [he] ha[d] been convicted of an aggravated felony as defined in . . . 8 U.S.C. 1101(a)(43)(F)," and the form listed his evading-arrest conviction as the qualifying crime. Ortiz-Rodriguez is correct that Texas evading arrest is not *currently* an "aggravated felony," at least under 8 U.S.C. § 1101(a)(43)(F) and 18 U.S.C. § 16(b).[21] However, at the time of Ortiz-

_____

[18] 481 U.S. 828 (1987).

[19] *Id.* at 840.

[20] *United States v. Hernandez Velasquez*, 120 F.4th 1294, 1297 (5th Cir. 2024).

[21] *See* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" as a "a crime of violence" under 18 U.S.C. § 16); *Sessions v. Dimaya*, 584 U.S. 148, 161-62 (2018) (holding that 18 U.S.C. § 16(b) is unconstitutionally vague); *see also Diaz-Esparza v. Sessions*, 697 F.

24-50213
c/w No. 24-50224

Rodriguez's October 2017 expedited removal proceedings (and his January 2018 deportation), his evading arrest conviction was considered to be an aggravated felony under our decision in *United States v. Sanchez-Ledezma*.[22] Even though that decision was subsequently overturned, the "error on the merits does not excuse the noncitizen's failure to . . . [seek] judicial review[,] [which,] if necessary, could fix that very error."[23]  The First Circuit has also rejected a similar argument in a § 1326(d) proceeding.[24]

Our opinion in *United States v. Cordova-Soto*,[25] while not directly on point,[26] also broadly stands for the proposition that a statement of law which

_____

App'x 338, 339 (5th Cir. 2017) (per curiam) (stating, in September 2017, that the Texas offense of evading arrest with a vehicle is a crime of violence under 18 U.S.C. § 16(b)), *cert. granted, vacated, and remanded*, 584 U.S. 974 (2018) (remanding in May 2018 for further consideration in light of *Dimaya*).

[22] 630 F.3d 447, 451 (5th Cir. 2011) (holding that "[e]vading arrest with a motor vehicle" under Tex. Penal Code § 38.04(b) is a "crime of violence" under 18 U.S.C. § 16(b) and therefore an aggravated felony under 8 U.S.C. § 1101(a)(43)(F)), *abrogated by*, *Dimaya*, 584 U.S. 148; *see also Diaz-Esparza*, 697 F. App'x at 339-40 (declining to find that *Sanchez-Ledezma* had been overruled or "undermined").

[23] *United States v. Palomar-Santiago*, 593 U.S. 321, 327-28 (2021) ("[Section] 1326(d)'s first two procedural requirements are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable.").

[24] *See United States v. Soto-Mateo*, 799 F.3d 117, 123 (1st Cir. 2015) ("The appellant argues, in effect, that the decision in [*United States v.*] *Ozuna-Cabrera*[, 663 F.3d 496 (1st Cir. 2011),] means that his conviction for aggravated identity theft in 2009 was not a 'theft' offense; that he was therefore not an aggravated felon in 2009 under 8 U.S.C. § 1101(a)(43)(G); and, consequently, that DHS misled him.  We do not agree.  Since the law governing the classification of aggravated identity theft was unsettled at the time of the appellant's removal, we cannot fairly conclude that the appellant was misled at all.  A waiver of rights based on a reasonable interpretation of existing law is not rendered faulty by later jurisprudential developments.").

[25] 804 F.3d 714 (5th Cir. 2015).

[26] *See id.* at 722-23 (reviewing the challenge for plain error and resolving it on due process grounds).

9

24-50213
c/w No. 24-50224

later turns out to be erroneous does not render a waiver of rights unknowing or involuntary. Like Ortiz-Rodriguez, Cordova-Soto argued that a change in law made her earlier waiver of rights unknowing and involuntary.[27] We held that Cordova-Soto was unable to show that she was deprived of the opportunity for judicial review, despite the Supreme Court determining, a few months after her removal proceedings, "that an offense such as [her] drug conviction does not qualify as an aggravated felony."[28]

Ortiz-Rodriguez's second point—that the form misled him into believing he could not challenge the aggravated felony finding—is also unavailing. Specifically, Ortiz-Rodriguez argues that the checkboxes on the second page of the Notice of Intent misled him. Ortiz-Rodriguez notes that the checkboxes provided opportunities for him to "contest his deportability" on factual grounds—such as disputing his citizenship status or whether he was convicted of the predicate offense—but that there is no box for him to dispute the legal conclusion that his evading arrest conviction was an aggravated felony. However, the form elsewhere noted his right to petition to "the appropriate U.S. Circuit Court of Appeals," and it did not state that only factual challenges were permitted.[29] Ortiz-Rodriguez's subjective belief that he could not challenge the Notice of Intent's legal conclusions does not

_____

[27] *Id.* at 722.

[28] *Id.* at 722-24.

[29] *See United States v. Cortez-Zepeda*, No. 24-50418, 2025 WL 1904482, at *3 (5th Cir. July 10, 2025) ("Cortez-Zepeda's argument that [the Notice of Intent checkboxes] did not allow his legal challenge ignores that the Notice informed him of a different avenue to challenge the deportation: his right to seek judicial review, in the appropriate United States Court of Appeals, 'as provided for in section 242 of the Act, 8 U.S.C. 1252.'").

control.[30]  In an analogous context, we have explained that "[t]he fact that [an alien challenging the reinstatement of a removal order] erroneously believed no avenue of federal judicial review was available is of no consequence."[31]

Ortiz-Rodriguez asserts that he "signed [the Notice of Intent] in less than a minute," and the immigration agent "did not claim to have explained the form." However, a box that would apply if an interpreter had "explained and/or served this Notice of Intent to the alien" in a language other than English was unchecked, and instead, the Notice states "I explained and/or served this Notice of Intent to the alien in the English language." Ortiz-Rodriguez is fluent in English.

Ortiz-Rodriguez relies on the Ninth Circuit's opinion in *United States v. Valdivia-Flores*[32] for support. Like Ortiz-Rodriguez, Valdivia-Flores was charged with illegal reentry under 8 U.S.C. § 1326 and made a collateral attack on his prior expedited removal, arguing that an earlier conviction "was incorrectly determined to be an aggravated felony."[33] Like Ortiz-Rodriguez, Valdivia-Flores "assert[ed] that his [appeal] waiver was not considered and intelligent,"[34] and the Ninth Circuit agreed:

––––––––––––––––––––––

[30] *See id.* ("Even if Cortez-Zepeda did not have actual knowledge that 'section 242 of the Act, 8 U.S.C. 1252' authorizes judicial review of questions of law, he was not deprived of judicial review.").

[31] *Ramirez-Molina v. Ziglar*, 436 F.3d 508, 510, 515 (5th Cir. 2006).

[32] 876 F.3d 1201 (9th Cir. 2017), *overruled on other grounds by*, *Alfred v. Garland*, 64 F.4th 1025, 1048 (9th Cir. 2023) (en banc) (discussing errors in *Valdivia-Flores*'s mens rea analysis).

[33] *Id.* at 1204-05.

[34] *Id.* at 1205.

24-50213
c/w No. 24-50224

Here, although the Notice of Intent described the window in which Valdivia-Flores could respond to the charges against him or file a petition for judicial review, it did not explicitly inform him that he could refute, through either an administrative or judicial procedure, the legal conclusion underlying his removability. In fact, the Notice of Intent's three check boxes suggested just the opposite—that removability could only be contested on factual grounds. The list of options available to "check off" did not include an option to contest the classification of the conviction as an aggravated felony . . . .

. . . The government provides no evidence that an immigration officer ever met with Valdivia-Flores to explain the form or the issues it raised; rather, the government merely relies on the sufficiency of the form's text to communicate Valdivia-Flores's options.

Under these circumstances, we conclude that Valdivia-Flores's waiver of the right to seek judicial review was not considered and intelligent.[35]

But *Valdivia-Flores* is inconsistent with our precedents, and we decline to follow it; the analysis in *Valdivia-Flores* is based on an evidentiary burden that is reversed in this circuit. We place the burden on the "defendant to show that [a] stipulation and waiver was invalid."[36] By contrast, *Valdivia-Flores* requires the Government to "show by clear and convincing evidence that the waiver was valid" and criticizes the Government for "provid[ing] no evidence that an immigration officer ever met with Valdivia-Flores to explain the form or the issues it raised."[37] The decision in *Valdivia-Flores* also notes that the Government "may not simply

---

[35] *Id.* at 1205-06.

[36] *United States v. Hernandez Velasquez*, 120 F.4th 1294, 1297 (5th Cir. 2024).

[37] *Valdivia-Flores*, 876 F.3d at 1205-06.

12

rely on the signed document purportedly agreeing to the waiver,"[38] a position with which our circuit disagrees.[39] Ortiz-Rodriguez does not point us to another circuit that follows the Ninth Circuit's approach.

Ortiz-Rodriguez also relies on our opinion in *Partible v. INS*[40] and the Third Circuit's opinion in *United States v. Charleswell*.[41] The *Partible* decision held that an alien's waiver of the right to counsel in immigration proceedings was unknowing because she lacked "any understanding . . . of the complexity of her dilemma and . . . any awareness of the cogent legal arguments which could have been made on her behalf."[42] The "complexity of her dilemma" arose from the complicated web of standards related to the admissibility of nurses under the INA and state law.[43] Our court has since noted that *Partible* involved "uniquely complex facts" where counsel would have been helpful.[44] At the time of Ortiz-Rodriguez's expedited removal, there were no "complex facts" in his case; it was settled law in this circuit that Ortiz-Rodriguez had committed an aggravated felony and was eligible for expedited removal.

---

[38] *Id.* at 1205.

[39] *See United States v. Cordova-Soto*, 804 F.3d 714, 721-22, 722 n.7 (5th Cir. 2015) ("In contrast, the Ninth Circuit has held that an IJ could not have found that the alien's waiver was voluntary and knowing based only on the signed stipulated form of removal.").

[40] 600 F.2d 1094 (5th Cir. 1979).

[41] 456 F.3d 347 (3d Cir. 2006).

[42] *Partible*, 600 F.2d at 1096.

[43] *Id.* at 1096-97.

[44] *Ramirez-Osorio v. INS*, 745 F.2d 937, 945 n.10 (5th Cir. 1984); *see also Ogbemudia v. INS*, 988 F.2d 595, 599 (5th Cir. 1993) (emphasizing "factual distinctions between the situation of the immigrant in *Partible* and" the present case); *Cobourne v. INS*, 779 F.2d 1564, 1567 (11th Cir. 1986) (per curiam) (noting "the complexity of the case" in *Partible*).

It is also important to recognize that Ortiz-Rodriguez did not face a binary choice; he was not forced to check *either* a box saying he *wished* to contest his removal *or* a box saying he *did not wish* to contest his removal. The first page of the Notice of Intent, located above the checkboxes that permitted Ortiz-Rodriguez to admit or contest removability, advised him that he had other options and rights. The page stated he had the right to seek counsel from a "list of available free legal services provided to [him]." It also stated he had the right to respond to the charges within thirteen calendar days and that his response could "request, for good cause, an extension of time; rebut the charges . . . ; request an opportunity to review the government's evidence; admit deportability; designate the country to which" he would be removed with certain reservations; "request withholding of removal" under 8 U.S.C. § 1231(b)(3) or deferral of removal; and request withholding or deferral of removal under the Convention Against Torture. The page further stated he could file a petition for review in a United States Court of Appeals.

The second page of the Notice was on the back. It contained a certificate of service, where Ortiz-Rodriguez signed an acknowledgment that he received the Notice of Intent. Beneath that certificate of service were the aforementioned boxes, which permitted an immigrant to check whether removal was contested. Ortiz-Rodriguez was not required to check either box. But he did, and he signed the additional signature line beneath those boxes. Just above that signature line, the Notice repeated that he had "the right to remain in the United States for 14 calendar days in order to apply for judicial review." The next two sentences in that same paragraph said, "I do not wish this opportunity. I waive this right." After reviewing *all* the information on the first page, and the information on the second page, Ortiz-Rodriguez signed on this line.

Ortiz-Rodriguez had other options; to name one, he could have left both boxes unchecked and filed a written response within thirteen days as the

14

other side of the form expressly told him was an option. The only thing Ortiz-Rodriguez had to do when served with the Notice was to sign and acknowledge receipt—he was not required to contest or admit removability.

The Third Circuit's opinion in *Charleswell* is more helpful to the Government than to Ortiz-Rodriguez. There, Charleswell launched collateral challenges to both a removal order and a reinstatement order.[45] The Third Circuit held that Charleswell was *not* deprived of an opportunity for judicial review of the removal order despite a "substantive error of law" by the immigration judge (IJ).[46] However, the Third Circuit held that Charleswell *was* "denied the opportunity of judicial review of the reinstatement order" because "reasonable persons reading [Charleswell's reinstatement notice] would be led to believe that their only avenue for relief if they desire to contest the reinstatement order would be to make . . . [a] statement to the immigration officer."[47] The Third Circuit cited defects in Charleswell's reinstatement notice that are not present in this case: "Nowhere on [Charleswell's reinstatement notice] is there a statement alerting the alien that he may seek judicial review, pursuant to § 1252(a)(5), in the federal courts of appeals."[48] The Third Circuit even suggested that a "sensibly easy way to cure this glaring deficiency would be to amend the regulations governing the reinstatement process to include, directly on the Notice/Intent form, some notice that an alien may seek review of the reinstatement determination in the appropriate court of appeals."[49] The

---

[45] *Charleswell*, 456 F.3d at 349.

[46] *Id.* at 353 & n.5 ("[T]he IJ, incredibly, believed that the United States Virgin Islands were not a territory of the United States . . . .").

[47] *Id.* at 354-57.

[48] *Id.* at 356.

[49] *Id.* at 357.

15

24-50213
c/w No. 24-50224

Notice of Intent that Ortiz-Rodriguez signed includes exactly that: a statement that he has the right to "file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals."

This court's recent unpublished opinion in *United States v. Cortez-Zepeda*[50] supports both our conclusion that Ortiz-Rodriguez was not deprived of judicial review, as well as our decision to decline to follow *Valdivia-Flores*. Cortez-Zepeda argued that

> DHS improperly classified his sexual assault conviction as an aggravated felony, and because the [Notice of Intent] form only invited him to contest the charge for four enumerated factual reasons, he did not know that he could contest the aggravated felony classification and was therefore deprived of judicial review as required by § 1326(d).[51]

Our court rejected this argument. The opinion in *Cortez-Zepeda* stated that "[w]hether DHS improperly classified Cortez-Zepeda's sexual assault conviction as an aggravated felony is immaterial to whether he was deprived of judicial review," and "[n]othing in the Notice or waiver implied that Cortez-Zepeda could only challenge the factual—as opposed to legal—basis for his removal."[52] The *Cortez-Zepeda* decision noted that the Notice of Intent "makes clear that 'charge' refers not to the factual 'allegations,' but rather to the legal conclusion that Cortez-Zepeda was deportable because he

---

[50] *United States v. Cortez-Zepeda*, No. 24-50418, 2025 WL 1904482, at *3 (5th Cir. July 10, 2025) ("Cortez-Zepeda's argument that [the Notice of Intent checkboxes] did not allow his legal challenge ignores that the Notice informed him of a different avenue to challenge the deportation: his right to seek judicial review, in the appropriate United States Court of Appeals, 'as provided for in section 242 of the Act, 8 U.S.C. 1252.'").

[51] *Id.*

[52] *Id.*

committed an aggravated felony."[53]  Our court held that Cortez-Zepeda "produced no evidence that the waiver was not knowing, voluntary, and intelligent," and "[h]is decision to waive judicial review d[id] not constitute a deprivation of judicial review under § 1326(d)."[54]  So too here.

## B

Under § 1326(d)(3), the alien must show that "the entry of the order was fundamentally unfair."[55]  "An entry is fundamentally unfair if (1) the defendant did not receive procedural due process, and (2) the defendant suffered prejudice."[56]  Before analyzing these requirements, we first respond to Ortiz-Rodriguez's argument that these showings are unnecessary.

Ortiz-Rodriguez argues that we

> should follow the Ninth Circuit's approach that, "[w]here a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he [has] suffered prejudice as a result."[57]

_____

[53] *Id.*

[54] *Id.* at *4.

[55] 8 U.S.C. § 1326(d)(3).

[56] *United States v. Hernandez Velasquez*, 120 F.4th 1294, 1297 (5th Cir. 2024).

[57] *See United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015); *see also United States v. Valdivia-Flores*, 876 F.3d 1201, 1210 (9th Cir. 2017) ("Because Valdivia-Flores's drug trafficking conviction does not qualify as an aggravated felony under the categorical approach, it cannot support the asserted basis for Valdivia-Flores's 2009 removal. Valdivia-Flores was therefore prejudiced from his inability to seek judicial review for that removal."), *overruled on other grounds by*, *Alfred v. Garland*, 64 F.4th 1025, 1048 (9th Cir. 2023) (en banc).

24-50213
c/w No. 24-50224

As explained earlier, Ortiz-Rodriguez's evading arrest conviction is no longer an aggravated felony, so the Ninth Circuit's rule would allow him to satisfy § 1326(d)(3) without any further showing.

With great respect to our sister court, we decline to adopt the Ninth Circuit's approach. In *United States v. Parrales-Guzman*,[58] we rejected the nearly identical argument "that § 1326(d)'s bar on collateral attacks does not attach because [a prior] removal order was *void ab initio* as it rested on an unconstitutionally vague statute, [18 U.S.C.] § 16(b)."[59] We explained that such a rule would "upend[] Congress's mandate that collateral review in the course of re-entry prosecutions be available only in a narrow set of circumstances."[60] Similarly, in *United States v. Ramirez-Cortinas*,[61] we reversed the dismissal of a § 1326 indictment, reiterating that actual prejudice must be shown under § 1326(d)(3), even if the defendant can show that a prior removal was based on an erroneously categorized felony.[62]

The Supreme Court explicitly held in *United States v. Palomar-Santiago*[63] that "§ 1326(d)'s first two procedural requirements are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable."[64] In that case, Palomar-Santiago had been

---

[58] 922 F.3d 706 (5th Cir. 2019).

[59] *Id.* at 707.

[60] *Id.*

[61] 945 F.3d 286 (5th Cir. 2019).

[62] *Id.* at 293 ("[E]ven assuming the IJ and BIA erred in classifying Ramirez's bail jumping conviction as an aggravated felony (something we do not decide), Ramirez still could not show actual prejudice under § 1326(d). Consequently, the district court erred in dismissing Ramirez's indictment for illegal reentry.").

[63] 593 U.S. 321 (2021).

[64] *Id.* at 327.

convicted of a state DUI felony, and he was removed from the United States on the basis that this offense was an "aggravated felony."[65]  Several years after the DUI conviction, the Supreme Court issued its decision in *Leocal v. Ashcroft*,[66] which held that a DUI conviction was not a crime of violence or an aggravated felony.[67]  As the Supreme Court explained, "Palomar-Santiago's removal order thus never should have issued."[68]  Nevertheless, the Supreme Court concluded that this turn of events did not excuse Palomar-Santiago "from meeting § 1326(d)'s first two requirements."[69] The Supreme Court reasoned,

> Indeed, the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies (by appealing the immigration judge's decision to the BIA) or was deprived of the opportunity for judicial review (by filing a petition for review of a BIA decision with a Federal Court of Appeals).[70]

This reasoning makes particular sense with respect to § 1326(d)(3), as "[f]undamental fairness is a question of procedure," not substance.[71]

We now turn to whether Ortiz-Rodriguez (1) received due process and (2) was prejudiced by the order.

---

[65] *Id*. at 325.

[66] 543 U.S. 1 (2004).

[67] *See id.* at 11; *Palomar-Santiago*, 593 U.S. at 325.

[68] *Palomar-Santiago*, 593 U.S. at 325 (citing *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994) ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction.")).

[69] *Id*. at 326.

[70] *Id*. at 327.

[71] *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002).

24-50213
c/w No. 24-50224

**1**

Ortiz-Rodriguez cannot show that he was deprived of procedural due process. Ortiz-Rodriguez was removed via § 1228(b) expedited removal proceedings, and we held in *Benitez*[72] that "the administrative deportation procedures of § 1228 afforded [the defendant] the unimpeded opportunity to claim all the procedural due process to which he was constitutionally entitled. . . . Clearly the expedited statutory deportation scheme comports with the minimum requirements of due process pronounced by the Supreme Court . . . ."[73]

Ortiz-Rodriguez attempts to differentiate *Benitez*, arguing that (1) *Benitez* blessed the § 1228 procedures but did not "evaluate the adequacy" of the Notice of Intent, and (2) in *Benitez*, there was no dispute whether Benitez's predicate felony was properly categorized as an aggravated felony. The first point is not persuasive because "if INS complied with the statutory mechanism when deporting [Ortiz-Rodriguez], such deportation complies with the standards of due process."[74] Further, the process and forms described in *Benitez* are similar to, if not the same as, what Ortiz-Rodriguez received.[75] The second point fails because § 1326(d)(3) assesses the deportation *procedures*, not the "substantive validity" of the removal.[76]

---

[72] *United States v. Benitez-Villafuerte*, 186 F.3d 651 (5th Cir. 1999).

[73] *Id.* at 657-58; *see also United States v. Guzman-Ocampo*, 236 F.3d 233, 239 (5th Cir. 2000) (same).

[74] *Benitez*, 186 F.3d at 658.

[75] *Id.* at 654-55 (describing Benitez's Notice of Intent and other process, including the Final Administrative Removal Order).

[76] *See United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021).

Ortiz-Rodriguez also argues that the expedited removal procedures were fundamentally unfair because "he was not told he could challenge the aggravated felony finding" and his conviction for evading arrest "was eventually determined not to be an aggravated felony." The first argument fails for the same reasons that we discussed above when responding to Ortiz-Rodriguez's arguments that his appeal waiver was unknowing and involuntary.[77] Principally, the Notice of Intent notified Ortiz-Rodriguez of his right to "file a petition for review of this order" in this court.

The second argument fails because DHS correctly applied the law at the time of Ortiz-Rodriguez's expedited removal, and later changes to substantive law do not automatically render earlier immigration proceedings fundamentally unfair or procedurally deficient. In *Galvan-Escobar*,[78] we explained that a § 1326(d) defendant's argument that a "substantive change in the law . . . made his deportation proceedings fundamentally unfair in the first place[] misapprehends the protections of § 1326(d) and *Mendoza-Lopez*" because "[f]undamental fairness is unquestionably a 'question of procedure.'"[79] *Galvan-Escobar* is an unpublished case, but it is consistent

---

[77] *See supra* notes 18-54 and accompanying text.

[78] *Galvan-Escobar v. Gonzales*, 151 F. App'x 327 (5th Cir. 2006) (per curiam).

[79] *Id.* at 329 (quoting *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002)).

24-50213
c/w No. 24-50224

with opinions from other circuits[80] as well as our reasoning in non-§ 1326(d) cases.[81]

Ortiz-Rodriguez counters that many of the cases cited above are inapposite because they involve collateral challenges "to removal orders based on the denial of discretionary relief . . . ." In support, Ortiz-Rodriguez cites to Ninth Circuit case law that makes the same distinction. In a § 1326(d) analysis, the Ninth Circuit applies retroactive changes in substantive law when those changes implicate "grounds for removability" but not when they

---

[80] *United States v. Torres*, 383 F.3d 92, 104 & n.14 (3d Cir. 2004) ("Rather, Torres contends that his removal proceeding was rendered fundamentally unfair by the IJ's erroneous conclusion—in accordance with the then-reigning interpretation of the law—that Torres was not eligible for discretionary relief. Torres essentially argues that the IJ's error of law rose to the level of a due process violation. We disagree. . . . Indeed, the IJ's understanding of the law was not erroneous at the time. We are extremely reticent to treat as fundamentally unfair an administrative official's failure to predict that binding law will change."); *United States v. Lopez-Collazo*, 824 F.3d 453, 467 (4th Cir. 2016) ("Although an error of law, without more, 'will ordinarily not rise to the level of a due process violation,' there might be circumstances under which some courts would conclude that a misapplication of the law as it existed at the time—not as understood in light of subsequent judicial decisions—led to a due process violation." (citation omitted) (quoting *Torres*, 383 F.3d at 104)); *cf. United States v. Soto-Mateo*, 799 F.3d 117, 123 (1st Cir. 2015) ("Since the law governing the classification of aggravated identity theft was unsettled at the time of the appellant's removal, we cannot fairly conclude that the appellant was misled at all. A waiver of rights based on a reasonable interpretation of existing law is not rendered faulty by later jurisprudential developments.").

[81] *See Ovalles v. Holder*, 577 F.3d 288, 299 (5th Cir. 2009) (per curiam) ("Ovalles was afforded sufficient due process in his initial removal proceedings, and he was found removable based on an offense that, at the time, rendered him ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3). The fact that the law changed after Ovalles was removed does not mean that he was denied due process when he was prevented from reopening his proceedings years after his departure from this country, especially when he concededly did not request reopening with the specified allowed time even as calculated from the time the law changed.").

impact the availability of "discretionary relief."[82]  The Ninth Circuit reasons that

> [w]here a noncitizen is in fact removable, the denial of an opportunity to apply for [discretionary relief] . . . does not implicate the propriety of a removal in the same fundamental . . . way as does an IJ's legal determination that a noncitizen is removable on the basis of precedent we now know to have been erroneous.[83]

We respectfully decline to adopt the Ninth Circuit's approach. Section 1326(d)(3) asks whether "the entry of the order was fundamentally unfair,"[84] and regardless of the relief available, "[f]undamental fairness is a question of procedure,"[85] which is not altered by later substantive changes in the law.  Further, the distinction between discretionary relief and removal is unsound, at least in this context.  An alien is both removable under 8 U.S.C. § 1227(a)(2)(A) and ineligible for discretionary relief under 8 U.S.C. § 1229b(b)(1)(C) based on the same legal conclusion: the alien has been convicted of an aggravated felony or other qualifying crime.[86]  The right to appeal the determination of whether a conviction is an aggravated felony as a substantive matter provides due process.

---

[82] *United States v. Aguilera-Rios*, 769 F.3d 626, 632-33 (9th Cir. 2014).

[83] *Id.* at 633.

[84] 8 U.S.C. § 1326(d)(3).

[85] *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002).

[86] 8 U.S.C. § 1227(a)(2)(A); *id.* § 1229b(b)(1)(C); *see also Ovalles*, 577 F.3d at 299 ("Ovalles was afforded sufficient due process in his initial removal proceedings, and he was found removable based on an offense that, at the time, rendered him ineligible for cancellation of removal under 8 U.S.C. § 1229b(a)(3)."); *Niz-Chavez v. Garland*, 593 U.S. 155, 158 (2021) (describing 8 U.S.C. § 1229b(b)(1) as a "discretionary relief" provision).

Ortiz-Rodriguez does not point us to another circuit that applies the Ninth Circuit's approach.  Ortiz-Rodriguez's reply brief cites to the Tenth Circuit's decision in *Rivera-Nevarez*,[87] but the Tenth Circuit "[a]ssum[ed], without deciding, that Rivera-Nevarez can demonstrate that his removal proceeding was fundamentally unfair."[88]  In sum, Ortiz-Rodriguez was not deprived of due process.

**2**

Section 1326(d)(3) also requires a showing of prejudice,[89] which Ortiz-Rodriguez fails to make.  "A showing of prejudice means 'there was a reasonable likelihood that but for the errors complained of the defendant would not have been deported.'"[90]  Ortiz-Rodriguez argues that if DHS agents had recognized that Ortiz-Rodriguez was not eligible for expedited removal, he either would not have been deported or may have received voluntary departure if referred for other proceedings.  Ortiz-Rodriguez also argues that if DHS agents properly advised him of his rights, he may have ended up in "precisely the same position" as the alien in *Diaz Esparza v. Garland*.[91]  In *Diaz Esparza*, the BIA terminated removal proceedings against an alien because, following *Sessions v. Dimaya*,[92] the alien's evading arrest conviction was no longer an aggravated felony and thus the alien "was

_____

[87] *United States v. Rivera-Nevarez*, 418 F.3d 1104 (10th Cir. 2005).

[88] *Id.* at 1109.

[89] *United States v. Hernandez Velasquez*, 120 F.4th 1294, 1297 (5th Cir. 2024).

[90] *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658-59 (5th Cir. 1999) (quoting *United States v. Estrada-Trochez*, 66 F.3d 733, 735 (5th Cir. 1995)).

[91] 23 F.4th 563 (5th Cir. 2022).

[92] 584 U.S. 148 (2018).

not removable as charged."[93]  For its part, the Government argues that the application of law was correct at the time, and that Ortiz-Rodriguez would have been removed in other proceedings anyway based on his criminal record—which included the evading arrest conviction, a juvenile adjudication for aggravated sexual assault, and an arrest for failure to register as a sex offender.

Ortiz-Rodriguez cannot show prejudice because, at the time of his expedited removal and deportation, he was legally deportable under then-existing Fifth Circuit precedents.  "[I]f the defendant was legally deportable and, despite the INS's errors, the proceeding 'could not have yielded a different result,' the deportation is valid for purposes of section 1326."[94]  As the Fourth Circuit has put it, "[P]rejudice under § 1326(d) must be 'judged at the time of the [agency's removal] decision.' . . . [T]his is so even if the law is later changed."[95]  The focus on law at the time of the prior deportation proceeding fits the text of § 1326(d)(3), which asks whether the "*entry* of the order was fundamentally unfair."[96]  Here, DHS correctly applied the law at

---

[93] *Diaz Esparza*, 23 F.4th at 565-66.

[94] *United States v. Mendoza-Mata*, 322 F.3d 829, 832 (5th Cir. 2003) (quoting *Benitez-Villafuerte*, 186 F.3d at 659); *see also United States v. Lopez-Collazo*, 824 F.3d 453, 467 (4th Cir. 2016) ("The administrative removal order was actually premised on the faithful application of existing law.  Under the law as it was understood at the time of Lopez-Collazo's removal, he cannot have suffered prejudice because he was understood to be statutorily ineligible for relief from removal, and therefore there was no reasonable probability that he would not have been deported." (emphasis omitted)).

[95] *Lopez-Collazo*, 824 F.3d at 466 (second alteration in original) (quoting *United States v. Villanueva-Diaz*, 634 F.3d 844, 852 (5th Cir. 2011)); *see also United States v. Baptist*, 759 F.3d 690, 697-98 (7th Cir. 2014) ("Though the law has since changed and Baptist's possession offenses no longer constitute aggravated felonies under 8 U.S.C. § 1101(a)(43)(B), the law in effect at the time of Baptist's challenged removal is what matters to our analysis.").

[96] 8 U.S.C. § 1326(d)(3) (emphasis added).

the time of Ortiz-Rodriguez's expedited removal to determine that his evading arrest conviction qualified as an aggravated felony.[97]   Ortiz-Rodriguez cannot show prejudice.

## III

In a footnote, Ortiz-Rodriguez raises one additional issue: "To the extent that the requirements of § 1326(d) are more stringent than those required by *Mendoza-Lopez*, Ortiz-Rodriguez urges that the deportation here violated . . . the requirements of due process set forth in *Mendoza-Lopez*."[98] Assuming that this argument is not forfeited,[99] it fails.  This court's recent opinion in *United States v. Hernandez Velasquez*[100] confirmed that *Mendoza-Lopez* and § 1326(d) are coterminous: "Congress codified *Mendoza-Lopez* in § 1326(d).  Only *after* the prerequisites of § 1326(d) are satisfied would a defendant's inability to collaterally attack a removal order rise to the level of constitutional infirmity."[101] Ortiz-Rodriguez fails to satisfy § 1326(d), so any due process challenge under *Mendoza-Lopez* also fails.

\*    \*    \*

For the forgoing reasons, the district court's judgment is AFFIRMED.

---

[97] *See United States v. Sanchez-Ledezma*, 630 F.3d 447, 451 (5th Cir. 2011), *abrogated by*, *Dimaya*, 584 U.S. 148.

[98] *See United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).

[99] *See Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 n.7 (5th Cir. 2003) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived." (quoting *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc))).

[100] 120 F.4th 1294 (5th Cir. 2024).

[101] *Id.* at 1298 (citation omitted).

24-50213
c/w No. 24-50224

# APPENDIX

## Notice of Intent to Issue a Final Administrative Removal Order

In removal proceedings under section 238(b) of the Immigration and Nationality Act

Event No: HNT1703000344

File Number ▓▓▓▓▓▓

To: ISMAEL ADAN ORTIZ RODRIGUEZ AKA: ORTIZ, ISMAEL ADEN

Address: ICE-ERO 15850 Export Plaza Drive Houston, TEXAS, 77032

(Number, Street, City, State and ZIP Code)

Telephone: (281) 449-1481

(Area Code and Phone Number)

Pursuant to section 238(b) of the Immigration and Nationality Act (Act) as amended, 8 U.S.C. 1228(b), the Department of Homeland Security (Department) has determined that you are amenable to administrative removal proceedings. The determination is based on the following allegations:

1. You are not a citizen or national of the United States.

2. You are a native of MEXICO _____ and a citizen of MEXICO _____

3. You entered the United States (at)(near) El Paso, Texas _____ on or about April 21, 1999 _____

4. At that time you entered without inspection _____

5. You are not lawfully admitted for permanent residence.

6. You were, on February 22, 2017 _____, convicted in the 397th District _____ Court

   Grayson County, Texas _____ for the offense of Evading Arrest and Detention with a Vehi See I-831

   in violation of the Texas Penal Code _____

   for which the term of imprisonment imposed was two (2) years _____.

**Charge:**
You are deportable under section 237(a)(2)(A)(iii) of the Act, 8 U.S.C. 1227(a)(2)(A)(iii), as amended, because you have been convicted of an aggravated felony as defined in section 101(a)(43)( F ) of the Act, 8 U.S.C. 1101(a)(43)( F ).

Based upon section 238(b) of the Act, 8 U.S.C. 1228(b), the Department is serving upon you this NOTICE OF INTENT TO ISSUE A FINAL ADMINISTRATIVE REMOVAL ORDER ("Notice of Intent") without a hearing before an Immigration Judge.

**Your Rights and Responsibilities:**
You may be represented (at no expense to the United States government) by counsel, authorized to practice in this proceeding. If you wish legal advice and cannot afford it, you may contact legal counsel from the list of available free legal services provided to you.

You must respond to the above charges in writing to the Department address provided on the other side of this form within 10 calendar days of service of this notice (or 13 calendar days if service is by mail). **The Department must RECEIVE your response within that time period.**

In your response you may: request, for good cause, an extension of time; rebut the charges stated above (with supporting evidence); request an opportunity to review the government's evidence; admit deportability; designate the country to which you choose to be removed in the event that a final order of removal is issued (which designation the Department will honor only to the extent permitted under section 241of the Act, 8 U.S.C. 1231); and/or, if you fear persecution in any specific country or countries on account of race, religion, nationality, membership in a particular social group, or political opinion or, if you fear torture in any specific country or countries, you may request withholding of removal under section 241(b)(3) of the Act, 8 U.S.C. 1231(b)(3), or withholding/deferral of removal under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (Convention Against Torture). A grant of withholding or deferral of removal would prohibit your return to a country or countries where you would be persecuted or tortured, but would not prevent your removal to a safe third country.

You have the right to remain in the United States for 14 calendar days so that you may file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals as provided for in section 242 of the Act, 8 U.S.C. 1252. You may waive your right to remain in the United States for this 14-day period. If you do not file a petition for review within this 14-day period, you will still be allowed to file a petition from outside of the United States so long as that petition is filed with the appropriate U.S. Circuit Court of Appeals within 30 calendar days of the date of your final order of removal.

SHAWNA CAMPBELL - ASFDO

(Signature and Title of Issuing Officer)

Huntsville, Texas

(City and State of Issuance)

July 17, 2017 00:00

(Date and Time)

Form I-851 (Rev. 08/01/07)

27

24-50213
c/w No. 24-50224

---

**Certificate of Service**

I served this Notice of Intent. I have determined that the person served with this document is the individual named on the other side of the form.

_____ D.O.                    10-13-17    0845    In Person
(Signature and Title of Officer)                 (Date and Manner of Service)

☐ I explained and/or served this Notice of Intent to the alien in the _____ English _____ language.

_____                          _____
(Name of interpreter)                            (Signature of interpreter)

Location/Employer:

I Acknowledge that I Have Received this Notice of Intent to Issue a Final Administrative Removal Order.

(X) _____                      10-13-17    0845
(Signature of Respondent)                        (Date and Time)

☐ The alien refused to acknowledge receipt of this document.

_____                          _____
(Signature and Title of Officer)                 (Date and Time)

☐ **I Wish to Contest and/or to Request Withholding of Removal**

☐ I contest my deportability because: *(Attach any supporting documentation)*

    ☐ I am a citizen or national of the United States.
    ☐ I am a lawful permanent resident of the United States.
    ☐ I was not convicted of the criminal offense described in allegation number 6 above.
    ☐ I am attaching documents in support of my rebuttal and request for further review.

☐ I request withholding or deferral of removal to _____ [Name of Country or Countries]:

    ☐ Under section 241(b)(3) of the Act, 8 U.S.C. 1231(b)(3), because I fear persecution on account of my race, religion, nationality, membership in a particular social group, or political opinion in that country or those countries.
    ☐ Under the Convention Against Torture, because I fear torture in that country or those countries.

_____   _____   _____
(Signature of Respondent)  (Printed Name of Respondent)  (Date and Time)

☒ **I Do Not Wish to Contest and/or to Request Withholding of Removal**

☒ I admit the allegations and charge in this Notice of Intent. I admit that I am deportable and acknowledge that I am not eligible for any form of relief from removal. I waive my right to rebut and contest the above charges. I do not wish to request withholding or deferral of removal. I wish to be removed to

    Mexico

☒ I understand that I have the right to remain in the United States for 14 calendar days in order to apply for judicial review. I do not wish this opportunity. I waive this right.

(X) _____   (X) Ismael Ortiz            10-13-17    0845
(Signature of Respondent)     (Printed Name of Respondent)  (Date and Time)

_____       Garcia                       10-13-17    0845
(Signature of Witness)        (Printed Name of Witness)     (Date and Time)

**RETURN THIS FORM TO:**
**Department Of Homeland Security**

_____
_____
_____

ATTENTION:    The Department office at the above address must RECEIVE your response within 10 calendar days from the date of service of this Notice of Intent (13 calendar days if service is by mail).

Form I-851 (Rev. 08/01/07)

---

28

24-50213
c/w No. 24-50224

Dana M. Douglas, *Circuit Judge*, concurring in part and dissenting in part:

All three judges today agree that Ismael Adan Ortiz-Rodriguez fails to satisfy the requirement of fundamental unfairness under 8 U.S.C. § 1326(d)(3) because he suffered no prejudice.  This alone necessitates affirmance.  But the majority opinion nevertheless wades into a discussion of § 1326(d)(2) and § 1326(d)(3)'s due process requirement.  I disagree with its analysis in this respect and therefore dissent in part.

**I**

As one of three statutorily imposed limitations on collateral attack of an underlying removal order, § 1326(d)(2) requires that Ortiz-Rodriguez show that "the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review."  8 U.S.C. § 1326(d)(2).  The "proceedings" at issue here amounted to an immigration agent serving Ortiz-Rodriguez with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent") and obtaining his signature on that form, thus subjecting Ortiz-Rodriguez to expedited removal.  The basis for his expedited removal was a 2017 Texas conviction for evading arrest or detention with a vehicle, Tex. Penal Code Ann. § 38.04(b)(2)(A), which qualified as an aggravated felony at that time.  *See* 8 U.S.C. § 1228 (permitting expedited removal proceedings for an undocumented immigrant convicted of an aggravated felony).

Although Ortiz-Rodriguez concedes that he could have sought judicial review of his expedited removal, he purportedly waived his right to seek such review.  According to Ortiz-Rodriguez, however, such waiver was neither considered nor intelligent, thereby depriving him of a meaningful opportunity for judicial review.  *See United States v. Mendoza-Lopez*, 481 U.S. 828, 840 (1987); *see also United States v. Hernandez Velasquez*, 120 F.4th

1294, 1297 (5th Cir. 2024) ("[T]he burden rests with the defendant to show that the stipulation and waiver was invalid.").

Relevant here, a portion of Ortiz-Rodriguez's Notice of Intent reads:

☐ I Wish to Contest and/or to Request Withholding of Removal

☐ I contest my deportability because: *(Attach any supporting documentation)*

   ☐ I am a citizen or national of the United States.
   ☐ I am a lawful permanent resident of the United States.
   ☐ I was not convicted of the criminal offense described in allegation number 6 above.
   ☐ I am attaching documents in support of my rebuttal and request for further review.

As shown, Ortiz-Rodriguez did not check the first or second checkbox indicating that he wished to contest his removal. Nor did he check any of the three checkboxes providing factual bases for contesting his removal: (1) that he is a citizen or national of the United States; (2) that he is a lawful permanent resident of the United States; or (3) that he was not convicted of the criminal offense described in the form (*i.e.*, the evading-arrest conviction). Also left unchecked was the final box indicating whether he was attaching any supporting documentation.

Ortiz-Rodriguez did, however, check a box on the form that stated: "I Do Not Wish to Contest and/or to Request Withholding of Removal." He also checked a box admitting to the allegations and charge listed in the Notice of Intent, admitting that he was deportable, and waiving his right to rebut and contest the charges.

True enough, it seems Ortiz-Rodriguez agreed to waive his right to contest removal. Yet Ortiz-Rodriguez contends that the Notice of Intent effectively confined his ability to contest his removability to the three limited grounds provided in the checkboxes, thereby leading him to believe he could not challenge the determination that he had been convicted of an aggravated felony. Those three checkboxes offer only factual grounds for contesting removal, and a legal challenge to the aggravated-felony classification of his evading-arrest conviction plainly does not fall within any of the enumerated

options. Ortiz-Rodriguez therefore asserts that by presenting a finite set of selections, the Notice of Intent delusively suggested that he could *only* contest his removability on those factual grounds.

The majority disagrees with Ortiz-Rodriguez for two reasons. *See ante* at 10–11. First, the majority highlights that the Notice of Intent elsewhere reflected Ortiz-Rodriguez's right to petition to the appropriate court of appeals. Specifically, it points to a portion of the form informing Ortiz-Rodriguez of his right to "file a petition for review of this order to the appropriate U.S. Circuit Court of Appeals." That portion of the form is not inconsistent with Ortiz-Rodriguez's understanding of the checkboxes: read together, one could reasonably believe that he has a right to petition for review, but only on the three factual grounds identified by the checkboxes. *See United States v. Cortez-Zepeda*, No. 24-50418, 2025 WL 1904482, at *5 (5th Cir. July 10, 2025) (unpublished) (DENNIS, J., dissenting) ("Logically, the form's delineated reasons for filing an appeal should explain how a defendant . . . can pursue the appeal described on the first page of the form.").

Second, the majority notes that the form did not state that Ortiz-Rodriguez could only raise factual challenges. But neither did it say that Ortiz-Rodriguez could raise legal challenges. And the Notice of Intent's silence in this respect is hardly determinative of whether Ortiz-Rodriguez's waiver was considered and intelligent. If anything, the form's lack of clarity lends further support to Ortiz-Rodriguez's argument.

Although omitted from the majority opinion's reasoning, I wish to touch upon one point raised by the Government during oral argument: that the fourth checkbox indicating the attachment of supporting documentation serves as a general "catch-all" option for contesting removability. Oral Arg. 18:33–19:00. By the Government's telling, that checkbox offered Ortiz-

Rodriguez an exhaustive basis upon which he could contest removal for any reason not expressly listed in the three preceding checkboxes, including a legal challenge to the aggravated felony classification. The plain language of that checkbox does not support this interpretation. Although indented in line with the three other checkboxes, the fourth checkbox is substantively distinct. It does not provide an additional *reason* for contestation; instead, it simply indicates that a contesting party should mark that box in addition to any of the three superseding checkboxes when he wishes to attach supporting documentation.

By way of example, a party contesting removal based on citizenship would mark the box that reads, "I am a citizen or national of the United States," and, if they attach documentation like a birth or naturalization certificate supporting that challenge, they may also mark the fourth checkbox to indicate as much. This comports with the italicized text preceding the four checkboxes that says, "*Attach any supporting documentation.*" And regardless, it can hardly be said that "attaching documents" logically suggests to a potential petitioner that he may raise a legal challenge. If intended to be a true "catch-all" option as the Government suggests, there are a myriad of ways to more clearly provide for such an option (*e.g.*, "Other" followed by a blank space to write in the basis for the challenge would surely better achieve this purpose).

The majority opinion also makes much of the "other options" Ortiz-Rodriguez had when presented with the Notice of Intent, including that he could have left the waiver box unchecked. *Ante* at 14–15. That he did not do so, the majority suggests, somehow validates his waiver. In so doing, the majority opinion glosses over the very core of Ortiz-Rodriguez's argument: that the "choices" the form presented were misleading and, therefore, his decision to check the waiver box was neither considered nor intelligent.

32

Although Ortiz-Rodriguez was not "forced to check" the waiver box, that alone says nothing about the validity of his waiver.

Additionally, Ortiz-Rodriguez is not alone in claiming confusion stemming from the Notice of Intent's limited checkboxes. Indeed, this court grappled with the identical issue in a recently decided unpublished decision. *See Cortez-Zepeda*, 2025 WL 1904482, at *3–4; *see also id.* at *4–5 (DENNIS, J., dissenting). And as the majority here acknowledges, *ante* at 11–12, the Ninth Circuit addressed an equally misleading Notice of Intent in *United States v. Valdivia-Flores*, 876 F.3d 1201 (9th Cir. 2017), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025, 1048 (9th Cir. 2023) (en banc). One question before the *Valdivia-Flores* court was whether the Notice of Intent established that Valdivia-Flores's waiver of his right to pursue a judicial appeal was considered and intelligent. *Id.* at 1206. The Ninth Circuit held that it did not and, thus, the waiver did not comport with due process. *See id.* In reaching its conclusion, the court highlighted that the Notice of Intent "did not include an option to contest the classification of the conviction as an aggravated felony, and the only check box relevant to the conviction itself only allowed Valdivia-Flores to contest that he 'was not convicted of the criminal offense described.'" *Id.* at 1206. Indeed, the Ninth Circuit recognized that the Notice of Intent confined Valdivia-Flores to same three fact-based challenges to his removal provided in Ortiz-Rodriguez's Notice of Intent. *Id.* at 1204.

In distinguishing *Valdivia-Flores*, the majority opinion places great weight on the differing evidentiary approaches among our circuits. *Ante* at 12–13. But even accounting for these differences, *Valdivia-Flores* addresses the crux of the issue presented here today: a fundamentally misleading and deficient form. Moreover, Ortiz-Rodriguez, like Valdivia-Flores, was not represented by legal counsel when he read and signed the Notice of Intent. And given the expedited nature of his removal proceedings, Ortiz-Rodriguez

"never had the benefit of appearing before an immigration judge, who, [ ] presume[ably], would have adequately conveyed both his appeal options and the finality associated with waiving appeal." *Valdivia-Flores*, 876 F.3d at 1206 (citation modified). Thus, against this backdrop, and coupled with the form's misleading language, I would hold that Ortiz-Rodriguez's waiver of the right to seek judicial review was not considered and intelligent.

## II

The majority opinion also concludes that Ortiz-Rodriguez fails to demonstrate that the entry of the removal order was fundamentally unfair under § 1326(d)(3) because he (1) received procedural due process and (2) suffered no prejudice. *Ante* at 17–26. I agree with the latter determination, as Ortiz-Rodriguez cannot show that he would not have been subject to deportation but for the alleged defect in his deportation proceedings. *United States v. Benitez-Villafuerte*, 186 F.3d 651, 658–59 (5th Cir. 1999). But I diverge with respect to the conclusion that Ortiz-Rodriguez received procedural due process.

As an initial matter, the majority opinion rejects Ortiz-Rodriguez's argument that where a prior expedited removal order was premised on a conviction that was later found not to be an aggravated felony, the defendant has established both that his due process rights were violated and that he suffered actual prejudice. *Ante* at 17–19. I agree that our court's precedent dictates that removal under these circumstances does not obviate a defendant's need to prove actual prejudice. *See United States v. Ramirez-Cortinas*, 945 F.3d 286, 291–93 (5th Cir. 2019).[1] However, I would find that

---

[1] According to Ortiz-Rodriguez and the majority opinion, *see ante* at 17–18, this court's precedent stands in contrast to the approach adopted by the Ninth Circuit in *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015) ("Where a prior removal order is

24-50213
c/w No. 24-50224

a due process violation necessarily occurs when, as here, the defendant was removed via expedited proceedings predicated upon a conviction since recognized not to qualify as an aggravated felony. *See United States v. Alvarez*, 60 F.4th 554, 558 (9th Cir. 2023) (holding that a defendant "can show that his due process rights were violated by defects in his deportation proceeding if he shows that his underlying state conviction was not, in fact, an aggravated felony.").

With due respect to my colleagues, the cases cited in the majority opinion do not support its contrary conclusion. *See ante* at 18–19. In *United States v. Parrales-Guzman*, 922 F.3d 706 (5th Cir. 2019), we held that § 1326(d)'s bar on collateral attacks attached despite the defendant's removal order having rested on an unconstitutionally vague statute. *Id.* at 707–08. Ortiz-Rodriguez does not question that holding. Indeed, Ortiz-Rodriguez does not argue that he need not satisfy § 1326(d)'s requirements generally or § 1326(d)(3)'s requirements specifically. He merely asserts that because the Department of Homeland Security classified his evading arrest conviction as an aggravated felony, and that conviction was later held not to qualify as such, he has sufficiently established both a violation of due process and actual prejudice, thereby satisfying § 1326(d)(3)'s requirement of fundamental unfairness. And in *Parrales-Guzman*, we expressly declined to consider § 1326(d)(3), holding only that the defendant's collateral attack failed because he did not exhaust administrative remedies as required by

---

premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he suffered prejudice as a result."). But more recent decisions from that court seemingly align with our requirement of an independent showing of actual prejudice. *See, e.g.*, *United States v. Orozco-Orozco*, 94 F.4th 1118, 1128 (9th Cir. 2024) (holding that a defendant whose removal was based on a conviction that did not constitute an aggravated felony had established that the order of removal was defective but "must [also] show that the defect prejudiced him").

§ 1326(d)(1). *Id.* at 707–08, 708 n.1. So, contrary to the majority's reading of that case, we had no occasion to consider the "identical argument" raised by Ortiz-Rodriguez. *Ante* at 18.

Our decision in *United States v. Ramirez-Cortinas*, 945 F.3d 286, likewise offers no insight into whether a due process violation has occurred. We held in that case that a defendant whose prior removal was based on a conviction no longer deemed an aggravated felony must demonstrate actual prejudice under § 1326(d)(3). *Id.* at 292–93. In other words, "[i]f despite the alleged errors, the proceeding could not have yielded a different result," the defendant's collateral attack fails for lack of actual prejudice. *Id.* at 292 (citation modified). But nothing in *Ramirez-Cortinas* suggests that the same is true for the due process requirement of § 1326(d)(3); because the defendant failed to show actual prejudice, we did not reach the issue of whether the defendant's due process rights had been violated.

The majority opinion's reliance upon *United States v. Palomar-Santiago*, 593 U.S. 321, 327 (2021), is equally misplaced. There, the Court unanimously rejected the approach adopted by the Ninth Circuit "that defendants are excused from proving the first two requirements of § 1326(d) if they were not convicted of an offense that made them removable." *Id.* at 326 (citation modified). The Court reasoned that such a rule allowing an undocumented immigrant to circumvent the normal review process when there was a substantive error in the removal order made little sense "if further administrative review, and then judicial review if necessary, could fix that very error." *Id.* at 328. Highlighting the statute's conjunctive language, the Court held that § 1326(d) makes clear that its requirements are "mandatory," *id.* at 326 (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)); thus, the procedural requirements of administrative exhaustion and deprivation of judicial review "are not satisfied just because a noncitizen was removed for an offense that did not in fact render him removable," *id.* at 327.

The majority opinion extends the Court's reasoning in *Palomar-Santiago* to § 1326(d)(3), noting that like § 1326(d)(1) and (2), the fundamental fairness prong presents "'a question of procedure,' not substance." *Ante* at 19 (quoting *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002)). Perhaps even more telling is the Court's unequivocal statement that "defendants must meet all three" prerequisites of § 1326(d). *Palomar-Santiago*, 593 U.S. at 326. Again, Ortiz-Rodriguez does not dispute this point. The question he presents is whether he has satisfied those mandatory prerequisites for collateral attack of his removal order. The *Palomar-Santiago* Court did not consider that question because "the narrow question th[e] Court granted certiorari to decide" asked only whether the defendant was "excused from" satisfying the first two statutory requirements of § 1326(d). *Id.* at 323, 328 n.4.

What is evident from *Palomar-Santiago* is that the substantive error of which Ortiz-Rodriguez complains—that his removal order was premised on a conviction later found not to be a removable aggravated felony offense—neither excuses nor satisfies the requirements of § 1326(d)(1) and (2). *See id.* at 327 ("Indeed, the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies . . . or was deprived of the opportunity for judicial review . . . ."). The Court's reasoning similarly applies to the actual prejudice requirement of § 1326(d)(3): one who is otherwise deportable suffers no prejudice from removal predicated on a conviction that no longer qualifies as an aggravated felony, so that error in felony classification alone does not prove actual prejudice. *See Ramirez-Cortinas*, 945 F.3d at 239.

The same, however, is not true of § 1326(d)(3)'s due process requirement. When, as here, a defendant's removal order was premised upon a conviction later determined not to be an aggravated felony, that error renders the order defective. *See Alvarez*, 60 F.4th at 558. Such defects in the

underlying deportation proceeding, in turn, show that defendant's due process rights were violated. *See id.* (holding that due process violations occur from defects in underlying deportation proceedings); *United States v. Guzman*, 998 F.3d 562, 566–67 (4th Cir. 2021) (same); *United States v. Estrada*, 876 F.3d 885, 887 (6th Cir. 2017) (same). This is so because absent that aggravated felony classification, the defendant would not have been subject to expedited removal proceedings. Instead, the defendant would have had the opportunity to appear before an immigration judge and proffer defenses and, if unsuccessful, to appeal to the Board of Immigration Appeals. *Palomar-Santiago*, 593 U.S. at 324. But those processes are unavailable in expedited removal proceedings. Therefore, by subjecting the defendant to expedited removal based upon an error in felony classification, it cannot be said that "the administrative deportation procedures . . . afforded [the defendant] the unimpeded opportunity to claim all the procedural due process to which he was constitutionally entitled." *Benitez-Villafuerte*, 186 F.3d at 657. For these reasons, I would also hold that Ortiz-Rodriguez has shown a violation of his due process rights.